**SEAGLE LAW, PLLC**
J. Harold Seagle
P.O. Box 15307
Asheville, N.C. 28813
Telephone: 828-774-5711
haroldseagle@charter.net
North Carolina Bar No. 8017

**BARON & BUDD, P.C.**
Scott Summy
(North Carolina Bar No. 27171)
ssummy@baronbudd.com
Cary L. McDougal (Pro Hac Vice)
(Texas State Bar No. 13569600)
Stephen C. Johnston (Pro Hac Vice)
(Texas State Bar No. 00796839)
M. Cristina Sanchez (Pro Hac Vice)
(Texas State Bar No. 24041856)
Brett Land (Pro Hac Vice)
(Texas State Bar No. 24092664)
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219-4281
Telephone: (214) 521-3605
Fax: (214) 520-1181

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

No. _____:_____-CV-_____-____

| | |
|---|---|
| JAMES O`BRIEN, LAURA O`BRIEN, GLENN LEWIS SR., NICOLE RIVERS, JAMES DANIELS, SHAWNA ENGLER, CHARLES CANADY JR., DORIS CANADY, KENNETH DEW, AARON MANUEL, SHERRY MANUEL, PAUL PRCHAL, JORDAN PRCHAL, JACKIE STEWART, BOBBY STEWART, JACK SMITH JR., DOUGLAS CULVER II, ELIZABETH CULVER, DAVID SMITH JR, BETTY SMITH, TISHER RAYE, BRETT HARDY, GINA HARDY, DANNY GREGORY, CYNTHIA GREGORY, STEPHEN HALES, GRACE HALES, PAMELA BRITT, CHARLENE AKE, BARBARA WEBB, RICKY SPENCER, WARREN DICKENS, CRAIG ALLEN, | **COMPLAINT** |

-1-

GRETCHEN ALLEN, PHILLIP AUTRY,
MANDISA AUTRY, LOREN BEAHM,
ANNE BEAHM, MICHAEL BEARD,
DEBBIE BEARD, JAMES BLEDSOE,
JANIS BLEDSOE, CHARLES BROWN,
DEBRA BROWN, BORIS CALDERON,
WANDA CALDERON, ERNEST
CANADY, JANICE CANADY, SAM
CHAPMAN, THERESA CHAPMAN,
AARON COMPTON, JENITA COMPTON,
MICHAEL COX, KERESEA COX,
BENJAMIN DIECK, LYDIA DIECK,
CHRISTOPHER DUNN, KERRY DUNN,
JAKOB ECKLUND, LESLIE ECKLUND,
SCOTT ELLIS, CANDI ELLIS, PAUL
FRYE, MYONG FRYE, VERONICA
FULTON, BERNICE HAMMONDS,
KARABETH HAMMONDS, DONALD
HEALEY, JO HEALEY, ELWOOD
HEINER, CARROL HEINER, GENE
HESTER, ANN HESTER, GLEN
HOFSTROM, THERESA HOFSTROM,
WILLIAM HOLLOWAY, DEBORAH
HOLLOWAY, DANNY JACKSON,
CHARLENE JACKSON, CHARLES
JACKSON, KRISTY JACKSON,
MAURICE JACKSON, NEDRA
JACKSON, PAUL KELLEY, KIMBERLY
KELLEY, BROOKE LOCKLEAR, ELI
MANDUJANO, KATHRYN FOARD-
MANDUJANO, HOWARD MELTON,
KENRIC MELVIN, LEVETTA MELVIN,
WILLIAM MITCHELL, PATRICIA
MITCHELL, SCOTT MOON, KRISTEN
MOON, JOSHUA OTEY, WENDY OTEY,
RONALD PARKER JR., CAROL
PARKER, LARRY PARSLEY, GARNA
PARSLEY, GENE PHILLIPS, DEBORAH
PHILLIPS, MATTHEW PHILPOT, JILL
PHILPOT, WILLIAM PRITCHARD,
REBECCA PRITCHARD, WILLIAM
PUGH, RUTH PUGH, RONALD
RAGLAND, ROBIN RAGLAND,
STEPHEN RAINES, DEBORAH RAINES,
JOSE RODRIGUEZ, TERESA
RODRIGUEZ, RAYMOND  ROGERS,
MARY ROGERS, AARON ROSENBERG,
JODY ROSENBERG, MICHAEL RUBLE,
SARA RUBLE, DANIEL SMITH, KRISTA
SMITH, LOREN SPENCER, MELISSA
SPENCER, BRYAN SPENCER,
REBECCA SPENCER, BRIAN THOMAS,
PATRICIA THOMAS, RAYMOND
TOLER JR., TIFFANY TOLER, DANIEL

-2-

ULLOM, VERNELL ULLOM, ROLAND
WHEELER, JR., REGINA WHEELER,
ROLAND WHEELER, SR., YVONNE
WHEELER, MARK WONDERLY,
SUSAN WONDERLY, NATHAN YOST,
STEPHANIE YOST, CHAD BARFIELD,
ARTHUR BELL, RONALD BENSON,
GERALD BLACK, PATRICIA
BROGDON-WILCOX, WILLIAM
BROWN JR., DEBORAH BURNEY,
PANY BUTLER, HEATHER CALLIHAN,
KIM CANADY, MARIA CANAS,
LYNETTE CARMONA, JULIAN
CLEMENGER, MICKEY CLEVIDENCE,
LOUANNA CORDOVA, SAMUEL
COUNCIL, JAMES T. COUNCIL,
STEVEN DION, WANDA EVANS,
VONDA FLOYD, STEVE FOGLEMAN,
DELOIS GAMBLE, LETICIA GILMORE,
GREGORY HAIR, JAMES HARRIS,
CHARLES HAYES, RONALD HENSLEY,
WILLIE HERNDON, DONNA
HULTBERG, BRIAN JONES,
CHRISTOPHER JONES, THOMAS
KEISTER, VELDA KESTER, MICHELLE
KEY, DENISE KIRK, GERTRUDE KIRK,
JAMES KUSSMAN, DAWN KUSSMAN,
PATRICIA LEADBEATER, JOSEPH
MAITLAND, MICHAEL MCLAMB,
GARY MITCHELL, REBECCA
MONTALDO, CARLA MONTEMAYOR,
PAUL MORRIS, CANDICE ODOM,
MALENNA ORNDORF, HUBERT
PARKER JR., MATTHEW PIERCE,
KAREN PRICE, LEONARD PRYOR,
DAVID STEPHENS, BERNETTE
THAGGARD, BERNICE THAGGARD,
MARY THAGGARD, STEVEN
THOMPSON, NELLIE WARREN, MARIA
WATSON, CRAIG WAYMAN, WENDY
WAYMAN, ROBERT WESSELMAN,
TERRENCE WHITE, GREGORY
WILKERSON, CHRISTOPHER
WILLIAMS, RICHARD YOUNG

      Plaintiffs,

v.

E.I. DU PONT DE NEMOURS AND
COMPANY, a business entity form
unknown; THE CHEMOURS COMPANY,
a Delaware corporation; THE CHEMOURS

-3-

COMPANY FC, LLC, a Delaware limited                    )
liability company, and DOES 1 to 25,                   )
                                                       )
                                                       )
        Defendants.

_____

        The Plaintiffs listed in the caption above, on behalf of themselves individually, allege the following upon information and belief:

# I.     INTRODUCTION

        1.      The events giving rise to this Complaint are part of a decades-long history of E. I. du Pont de Nemours and Company's ("DuPont") discharges of toxic substances into the community near their Fayetteville Works facility with blatant disregard for the effects on the people living nearby.  As has been widely reported, DuPont, and its successor Chemours, released countless chemicals while assuring the United States Environmental Protection Agency ("EPA") and state agencies that they were doing no such thing.  Plaintiffs are owners of property – including but not limited to surface water and groundwater -- located near the Fayetteville Works facility that have been contaminated by Defendants' operations.

        2.      DuPont in fact has a long history of toxic chemical liabilities arising from perfluoroalkyl substances (PFASs) such as the biopersistent, bioaccumulative, toxic chemical PFOA[1] also known as "C8."[2] DuPont began using C8 in 1951 to make consumer products including the immensely popular Teflon® non-stick cookware and continued to use it profitably for decades. When DuPont's supplier, the 3M Company, came under increasing scrutiny from the United States Environmental Protection Agency and decided to stop making C8, DuPont began producing C8 at the Fayetteville Works facility located on the Cape Fear River in North Carolina, assuring regulators and the public that all C8 wastewater would be contained and disposed of elsewhere, and that C8 presented no threat to human health or the environment. Only

---

[1] Perfluorooctonic acid, CAS No. 335-67-1.
[2] "C8" refers to the eight-carbon chain in the perfluorinated molecule of PFOA. The term "C8" also includes the ammonium salt of PFOA, known as "APFO", which is dissolved by water into PFOA and ammonium.

when residents near DuPont's manufacturing plant in Parkersburg, West Virginia began to pursue litigation over DuPont's contamination of the Ohio River with C8 did evidence begin to emerge of DuPont's internal knowledge of C8's health hazards, which DuPont had concealed from the EPA. Mounting evidence, thousands of civil lawsuits, epidemiological studies, and federal agency pressure—including the largest environmental administrative penalty ever imposed by the EPA—eventually forced DuPont to begin phasing out C8 in 2006.

3.      To keep producing its highly profitable fluoroproducts, DuPont turned to an alternative perfluorinated chemical -- dubbed "GenX" -- which DuPont also planned to manufacture at the Fayetteville Works facility. To obtain the necessary approvals and permits, DuPont assured state and federal regulators that GenX would not be released into the Cape Fear River—even though DuPont knew that it had secretly been releasing GenX into the river since at least 1980 (and planned to continue doing so). DuPont understood that regulators were concerned about the hazards of perfluorinated chemicals such as C8 and GenX, and had data from its own studies to demonstrate GenX's toxicity in animals, but remained silent about its ongoing contamination of the drinking water supply for hundreds of thousands of North Carolinians. Instead, in a familiar refrain, DuPont maintained that GenX presented no threats to human health or the environment. DuPont's repugnant act of deception worked, and in 2009, commercial production of GenX began at the Fayetteville Works facility, where DuPont also continued to manufacture C8 until at least 2013.

4.      Meanwhile, by 2011, DuPont could no longer credibly deny the toxicity of C8 because an independent scientific panel created to help settle a class action over DuPont's Ohio River contamination had begun to release a series of reports linking C8 exposure to various serious health effects in humans. Facing thousands of pending personal injury lawsuits, DuPont became desperate to spin off its C8 liabilities. By mid-2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of a new and apparently undercapitalized entity, Defendant Chemours Company, which *Fortune* magazine described as "[l]oaded up with debt and stuffed full of potentially toxic assets…[and] seen by many investors as a listing garbage

-5-

scow locked on a one-way course to the bottom of the ocean" due to the C8 liability that "now sits on its balance sheet like a ticking time bomb."[3] Chemours has sued DuPont, alleging that DuPont lowballed the cost of environmental liability Chemours would face as a result of PFAS manufacture.[4] By 2017, over 3,500 civil lawsuits had been filed against DuPont for C8 contamination of the Ohio River and the drinking water of nearly 70,000 residents in and around Parkersburg, West Virginia. All told, DuPont and Chemours will pay over $1 billion to resolve the C8 liabilities related to Ohio River contamination.

5.     As a result of the 2015 spin-off, Chemours now owns the Fayetteville Works facility, where it continues to lease manufacturing space to DuPont and to produce a variety of products that involve PFASs, including GenX. In November 2016, environmental scientists published the results of water testing that showed high levels of GenX in the Cape Fear River downstream of the Fayetteville Works facility, at the intake for the raw water that is used to generate drinking water for thousands of North Carolinians in a five-county area. Next, in late 2017, came the discovery that hundreds of groundwater wells near the Fayetteville Works facility contain high levels of GenX. Worse, research by environmental scientists show that conventional water treatment technologies do not effectively remove such chemicals from drinking water. Confronted by state regulators, Chemours finally admitted that DuPont had been releasing GenX from its Fayetteville Works plant since at least 1980—a fact long concealed from the State of North Carolina. Sampling in private groundwater wells near the Fayetteville Works facility found a variety of undisclosed byproducts—including Nafion® Byproducts 1 and 2 ("C7")[5], GenX ("C6"), and other PFASs known as PFECAs (perfluoroalkyl ether carboxylic acids). Defendants released these chemicals through wastewater, groundwater, and/or air deposition. Groundwater tests detected levels of GenX alone that exceed North Carolina's temporary health standard and

[3] http://fortune.com/2016/05/18/how-dupont-spinoff-chemours-came-back-from-the-brink/ (last viewed on May 4, 2020).
[4] ABC News, "Judge dismisses Chemours lawsuit against DuPont," https://abcnews.go.com/Business/wireStory/judge-dismisses-chemours-lawsuit-dupont-69885829 (last accessed May 8, 2020).
[5] "C6" and "C7" refer to the number of carbons in the perfluorinated molecules.

have repeatedly found levels considered to be unsafe. And GenX is only *one* of the PFASs that Defendants have knowingly released into the community near Fayetteville Works for decades. DuPont (and now Chemours) uses PFASs to manufacture a wide range of products, resulting in the production and potential release of hundreds (if not thousands) of different PFAS chemicals—and the identity of all the PFASs that enter the environment due to this process remains unknown to regulators and the public. While public attention has focused on C8, and now GenX, these discharges merely scratch the surface of what may be contained in water, soil, and air that Defendants have been polluting. So far, well over a dozen PFASs have been detected in the environment around the Fayetteville Works facility.

6.     Chemours, however, vows to handle its toxic liabilities differently than DuPont. Chemours' Code of Conduct: A Guide to Our Values explains that "Unshakeable Integrity" is one of Chemours' five values. Chemours' Code of Conduct vows to "do what's right for customers, colleagues, and communities -- always."[6] Chemours' Code of Conduct explains "our values are simple yet powerful, and our focus on delivering efficiency and results for our customers never overshadows our commitment to ethical behavior in all we do. When we do what's right for our people, customers, shareholders, and communities, success will follow."[7]

7.     Mark Newman, Chemours' Senior Vice President and Chief Financial Officer says "Whether it's being open and clear about our performance or our stewardship practices, our goal is to be brave and do the right thing, always."[8] Paul Kirsch, Chemours' Fluoroproducts President says, "When we do what's right for our customers, shareholders, and communities, we are confident success will follow."[9]

8.     *For nearly forty years*, Defendants have been secretly releasing their persistent, bioaccumulative, and toxic perfluorinated chemicals into the community around Fayetteville

---

[6] Chemours' *Code of Conduct: A Guide to Our Values* https://www.chemours.com/en/-/media/files/corporate/code-of-conduct-en-us.pdf?la=en&hash=F2F7A7308BFF13BBB23DF650E21AF978 (last accessed May 8, 2020).
[7] *Id.*
[8] *Id.*
[9] *Id.*

-7-

Works and contaminating property, groundwater, and surface water, including the Cape Fear River -- just as they did in Parkersburg, West Virginia -- all the while misleading state and Federal regulators and the public. Plaintiffs are owners of properties that have been contaminated and harmed by PFASs released from the Fayetteville Works facility by Defendants. By this lawsuit, Plaintiffs hope to hold Chemours to its promises.

**II.     PARTIES**

9.     Plaintiffs are owners of property located near the Fayetteville Works facility found to contain Defendants' PFAS chemicals.

10.     In addition, all Plaintiffs' own groundwater wells that have been sampled and found to contain PFAS chemicals at levels in exceedance of the groundwater standards set forth in Title 15A of the North Carolina Administrative Code, Subchapter 2L ("2L standards").  The 2L standards are intended "to protect the overall high quality of North Carolina's groundwaters . . . and to enhance and restore the quality of degraded groundwaters where feasible and necessary to protect human health and the environment . . . ." 15A N.C. Admin. Code 2L.0103.

11.     The following individuals are Plaintiffs in this action:

      i.     James O'Brien and Laura O'Brien are citizens of North Carolina, residing at 4774 Dudley Road, Fayetteville, North Carolina 28312.  Mr. and Mrs. O'Brien own property damaged as a result of the presence of Defendants' PFAS chemicals.  The harmed property includes, but is not limited to, property located at 4774 Dudley Road and 4780 Dudley Road, Fayetteville, North Carolina 28312.

     ii.     Glenn Lewis Sr. and Nicole Rivers are citizens of North Carolina, residing at 2266 Honey Lane, Hope Mills, North Carolina 28348.  Mr. Lewis and Ms. Rivers own property damaged as a result of the presence of Defendants' PFAS chemicals.  The harmed property includes, but is not limited to, property located at 2266 Honey Lane, Hope Mills, North Carolina 28348.

-8-

iii. James Daniels and Shawna Engler are citizens of North Carolina, residing at 5115 Maddie Creek Lane, Fayetteville, North Carolina 28306. Mr. Daniels and Ms. Engler own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 5115 Maddie Creek Lane, Fayetteville, North Carolina 28306.

iv. Kenneth Dew is a citizen of North Carolina, residing at 2286 Bayshore Drive SW, Supply, North Carolina 28462. Mr. Dew owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 4304 Marshwood Lake Road, Fayetteville, North Carolina 28306.

v. Charles Canady Jr. and Doris Canady are citizens of North Carolina, residing at 1764 John McMillan Road, Hope Mills, North Carolina 28348. Mr. and Mrs. Canady own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 1764 John McMillan Road, Hope Mills, North Carolina 28348.

vi. Aaron Manuel and Sherry Manuel are citizens of North Carolina, residing at 2888 Blossom Road, Hope Mills, North Carolina 28348. Mr. and Mrs. Manuel own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2888 Blossom Road and 2890 Blossom Road, Hope Mills, North Carolina 28348.

vii. Paul Prchal and Jordan Prchal are citizens of North Carolina, residing at 4780 Dudley Road, Fayetteville, North Carolina 28312. Mr. and Mrs. Prchal own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property

located at 4780 Dudley Road and 4774 Dudley Road, Fayetteville, North Carolina 28312.

viii. Jackie Stewart and Bobby Stewart are citizens of North Carolina, residing at 5240 Matt Hair Road, Fayetteville, North Carolina 28312. Mr. and Mrs. Stewart own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 5240 Matt Hair Road and 5194 Matt Hair Road, Fayetteville, North Carolina 28312.

ix. Jack Smith Jr. is a citizen of North Carolina, residing at 6446 Matt Hair Road, Fayetteville, North Carolina 28312. Mr. Smith owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 6446 Matt Hair Road and 6562 Matt Hair Road, Fayetteville, North Carolina 28312.

x. Douglas Culver II and Elizabeth Culver are citizens of North Carolina, residing at 6553 Causeway Street, Hope Mills, North Carolina 28348. Mr. and Mrs. Culver own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 6553 Causeway Street and 6601 Causeway Street, Hope Mills, North Carolina 28348.

xi. David Smith Jr. and Betty Smith are citizens of North Carolina, residing at 6610 Matt Hair Road, Fayetteville, North Carolina 28312. Mr. and Mrs. Smith own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 6610 Matt Hair Road, 6692 Matt Hair Road and 6728 Matt Hair Road, Fayetteville, North Carolina 28312.

xii. Tisher Raye is a citizen of North Carolina, residing at 6919 Johnson Road, Fayetteville, North Carolina 28312. Mrs. Raye owns property damaged as a

-10-

result of the presence of Defendants' PFAS chemicals.  The harmed property includes, but is not limited to, property located at 6919 Johnson Road and 6951 Johnson Road, Fayetteville, North Carolina 28312.

xiii.  Brett Hardy and Gina Hardy are citizens of North Carolina, residing at 6983 Point East Drive, Fayetteville, North Carolina 28306.  Mr. and Mrs. Hardy own property damaged as a result of the presence of Defendants' PFAS chemicals.  The harmed property includes, but is not limited to, property located at 6987 Point East Drive, Fayetteville, North Carolina 28306.

xiv.  Danny Gregory and Cynthia Gregory are citizens of North Carolina, residing at 5525 Matt Hair Road, Fayetteville, North Carolina 28312.  Mr. and Mrs. Gregory own property damaged as a result of the presence of Defendants' PFAS chemicals.  The harmed property includes, but is not limited to, property located at 5525 Matt Hair Road and 5563 Matt Hair Road, Fayetteville, North Carolina 28312.

xv.  Stephen Hales and Grace Hales are citizens of North Carolina, residing at 2681 Shadyside Lane, Fayetteville, North Carolina 28306.  Mr. and Mrs. Hales own property damaged as a result of the presence of Defendants' PFAS chemicals.  The harmed property includes, but is not limited to, property located at 2681 Shadyside Lane, 2671 Shadyside Lane, 2651 Shadyside Lane and 2677 Shadyside Lane, Fayetteville, North Carolina 28306.

xvi.  Pamela Britt is a citizen of North Carolina, residing at 8561 Tabor Church Road, White Oak, North Carolina 28399.  Ms. Britt owns property damaged as a result of the presence of Defendants' PFAS chemicals.  The harmed property includes, but is not limited to, property located at 8561 Tabor Church Road and 8661 Tabor Church Road, White Oak, North Carolina 28399.

xvii.  Charlene Ake is a citizen of North Carolina, residing at 8415 Tabor Church Road, White Oak, North Carolina 28399.  Ms. Ake owns property damaged as

-11-

a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 8415 Tabor Church Road and 8661 Tabor Church Road, White Oak, North Carolina 28399.

xviii. Barbara Webb is a citizen of North Carolina, residing at 5380 Matt Hair Road, Fayetteville, North Carolina 28312. Ms. Webb owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 5380 Matt Hair Road, Fayetteville, North Carolina 28312.

xix. Ricky Spencer is a citizen of North Carolina, residing at 570 Noble Drive, Rayford, North Carolina 28376. Mr. Spencer owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 4368 Tranquility Road, Fayetteville, North Carolina 28306.

xx. Warren Dickens is a citizen of North Carolina, residing at 2817 Selhurst Drive, Fayetteville, North Carolina 28306. Mr. Dickens owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 4368 Tranquility Road, Fayetteville, North Carolina 28306.

xxi. Craig Allen and Gretchen Allen are citizens of North Carolina, residing at 6820 County Place Drive, Hope Mills, North Carolina 28348. Mr. and Mrs. Allen own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 6820 County Place Drive, Hope Mills, North Carolina 28348.

xxii. Phillip Autry and Mandisa Autry are citizens of North Carolina, residing at 1661 Canady Pond Road, Hope Mills, North Carolina 28348. Mr. and Mrs. Autry own property damaged as a result of the presence of Defendants' PFAS

-12-

Case 5:20-cv-00208-D   Document 1   Filed 05/20/20   Page 12 of 69

chemicals. The harmed property includes, but is not limited to, property located at 1661 Canady Pond Road, Hope Mills, North Carolina 28348.

xxiii. Loren Beahm and Anne Beahm are citizens of North Carolina, residing at 7150 Honey Dip Drive, Parkton, North Carolina 28371. Mr. and Mrs. Beahm own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 7150 Honey Dip Drive, Parkton, North Carolina 28371.

xxiv. Michael Beard and Debbie Beard are citizens of North Carolina, residing at 3460 Sunny Dale Drive, Fayetteville, North Carolina 28312. Mr. and Mrs. Beard own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 3460 Sunny Dale Drive, Fayetteville, North Carolina 28312.

xxv. James Bledsoe and Janis Bledsoe are citizens of North Carolina, residing at 2612 Thrower Road, Hope Mills, North Carolina 28348. Mr. and Mrs. Bledsoe own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2612 Thrower Road, Hope Mills, North Carolina 28348.

xxvi. Charles Brown and Debra Brown are citizens of North Carolina, residing at 5941 Hirams Court, Hope Mills, North Carolina 28348. Mr. and Mrs. Brown own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 5941 Hirams Court, Hope Mills, North Carolina 28348.

xxvii. Boris Calderon and Wanda Calderon are citizens of North Carolina, residing at 5225 Bree Bridge Road, Lot #16, Fayetteville, North Carolina 28306. Mr. and Mrs. Calderon own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property

located at 5225 Bree Bridge Road, Lot #16, Fayetteville, North Carolina 28306.

xxviii. Ernest Canady and Janice Canady are citizens of North Carolina, residing at 6937 Sim Canady Road, Hope Mills, North Carolina 28348. Mr. and Mrs. Canady own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 6937 Sim Canady Road, Hope Mills, North Carolina 28348.

xxix. Sam Chapman and Theresa Chapman are citizens of North Carolina, residing at 2629 Dewop Drive, Fayetteville, North Carolina 28306. Mr. and Mrs. Chapman own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2629 Dewop Drive, Fayetteville, North Carolina 28306.

xxx. Aaron Compton and Jenita Compton are citizens of North Carolina, residing at 2250 John McMillan Road, Hope Mills, North Carolina 28348. Mr. and Mrs. Compton own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2250 John McMillan Road, Hope Mills, North Carolina 28348.

xxxi. Michael Cox Jr. and Keresea Cox are citizens of North Carolina, residing at 3556 Belridge Drive, Fayetteville, North Carolina 28348. Mr. Cox & Mrs. Cox and own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 3556 Belridge Drive, Fayetteville, North Carolina 28348 and 3884 Tranquility Road, Fayetevile, NC 28306 (Mrs. Cox).

xxxii. Benjamin Dieck and Lydia Dieck are citizens of North Carolina, residing at 4353 Tabor Church Road, Fayetteville, North Carolina 28312. Mr. and Mrs. Dieck own property damaged as a result of the presence of Defendants' PFAS

chemicals. The harmed property includes, but is not limited to, property located at 4353 Tabor Church Road, Fayetteville, North Carolina 28312.

xxxiii. Christopher Dunn and Kerry Dunn are citizens of North Carolina, residing at 4425 Tabor Church Road, Fayetteville, North Carolina 28312. Mr. and Mrs. Dunn own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 4425 Tabor Church Road, Fayetteville, North Carolina 28312.

xxxiv. Jakob Ecklund and Leslie Ecklund are citizens of North Carolina, residing at 3209 Thrower Road, Hope Mills, North Carolina 28348. Mr. and Mrs. Ecklund own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 3209 Thrower Road, Hope Mills, North Carolina 28348.

xxxv. Scott Ellis and Candi Ellis are citizens of North Carolina, residing at 2711 County Line Road, St. Pauls, North Carolina 28384. Mr. and Mrs. Ellis own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2711 County Line Road, St. Pauls, North Carolina 28384.

xxxvi. Paul Frye and Myong Frye are citizens of North Carolina, residing at 2691 County Line Road, St. Pauls, North Carolina 28384. Mr. and Mrs. Frye own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2691 County Line Road, St. Pauls, North Carolina 28384.

xxxvii. Veronica Fulton is a citizen of North Carolina, residing at 6319 Beauchamp Drive, Hope Mills, North Carolina 28348. Ms. Fulton owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 6319 Beauchamp Drive, Hope Mills, North Carolina 28348.

xxxviii. Bernice Hammonds and Karabeth Hammonds are citizens of North Carolina, residing at 2005 Iris Drive, Hope Mills, North Carolina 28348. Mr. and Mrs. Hammonds own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2005 Iris Drive, Hope Mills, North Carolina 28348.

xxxix. Donald Healey and Jo Healey are citizens of North Carolina, residing at 5338 Chickenfoot Road, St. Pauls, North Carolina 28384. Mr. and Mrs. Healey own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 5338 Chickenfoot Road, St. Pauls, North Carolina 28384.

xl. Elwood Heiner and Carrol Heiner are citizens of North Carolina, residing at 2678 County Line Road, St Pauls, North Carolina 28384. Mr. and Mrs. Heiner own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2678 County Line Road, St Pauls, North Carolina 28384.

xli. Gene Hester and Ann Hester are citizens of North Carolina, residing at 5949 AB Smith Road, Fayetteville, North Carolina 28312. Mr. and Mrs. Hester own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 5949 AB Smith Road, Fayetteville, North Carolina 28312.

xlii. Glen Hofstrom and Theresa Hofstrom are citizens of North Carolina, residing at 4649 Jackie Hood Lane, Fayetteville, North Carolina 28312. Mr. and Mrs. Hofstrom own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 4649 Jackie Hood Lane, Fayetteville, North Carolina 28312.

xliii. William Holloway and Deborah Holloway are citizens of North Carolina, residing at 5716 Ione Court, Hope Mills, North Carolina 28348. Mr. and Mrs.

-16-

Holloway own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 5716 Ione Court, Hope Mills, North Carolina 28348.

xliv. Danny Jackson and Charlene Jackson are citizens of North Carolina, residing at 2841 Alderman Road, Fayetteville, North Carolina 28306. Mr. and Mrs. Jackson own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2841 Alderman Road, Fayetteville, North Carolina 28306.

xlv. Charles Jackson and Kristy Jackson are citizens of North Carolina, residing at 1438 Joe Hall Road, Hope Mills, North Carolina 28348. Mr. and Mrs. Jackson own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 1438 Joe Hall Road, Hope Mills, North Carolina 28348.

xlvi. Maurice Jackson and Nedra Jackson are citizens of North Carolina, residing at 3839 Upton Tyson Road, Fayetteville, North Carolina 28306. Mr. and Mrs. Jackson own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 3839 Upton Tyson Road, Fayetteville, North Carolina 28306.

xlvii. Paul Kelley and Kimberly Kelley are citizens of North Carolina, residing at 1516 Abelia Road, Hope Mills, North Carolina 28348. Mr. and Mrs. Kelley own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 1516 Abelia Road, Hope Mills, North Carolina 28348.

xlviii. Brooke Locklear is a citizen of North Carolina, residing at 982 Point Hill Drive, Fayetteville, North Carolina 28306. Ms. Locklear owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property

includes, but is not limited to, property located at 982 Point Hill Drive, Fayetteville, North Carolina 28306.

xlix. Eli Mandujano and Kathryn Foard-Mandujano are citizens of North Carolina, residing at 2628 Riddle Farm Road, Fayetteville, North Carolina 28306. Mr. and Mrs. Mandujano own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2628 Riddle Farm Road, Fayetteville, North Carolina 28306.

l. Howard Melton is a citizen of North Carolina, residing at 3 Weathervane Drive, St. Pauls, North Carolina 28384. Mr. Melton owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 3 Weathervane Drive, St. Pauls, North Carolina 28384.

li. Kenric Melvin and Levetta Melvin are citizens of North Carolina, residing at 4514 Kirk Shaw Road, Hope Mills, North Carolina 28348. Mr. and Mrs. Melvin own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 4514 Kirk Shaw Road, Hope Mills, North Carolina 28348.

lii. William Mitchell and Patricia Mitchell are citizens of North Carolina, residing at 2152 Tobermory Road, St Pauls, North Carolina 28384. Mr. and Mrs. Mitchell own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2152 Tobermory Road, St Pauls, North Carolina 28384.

liii. Scott Moon and Kristen Moon are citizens of North Carolina, residing at 1905 Nantuckett Court, Fayetteville, North Carolina 28306. Mr. and Mrs. Moon own property damaged as a result of the presence of Defendants' PFAS

chemicals. The harmed property includes, but is not limited to, property located at 1905 Nantuckett Court, Fayetteville, North Carolina 28306.

liv. Joshua Otey and Wendy Otey are citizens of North Carolina, residing at 7289 Fire Dept Road, Hope Mills, North Carolina 28348. Mr. and Mrs. Otey own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 7289 Fire Dept Road, Hope Mills, North Carolina 28348.

lv. Ronald Parker Jr. and Carol Parker are citizens of North Carolina, residing at 8541 Congressional Avenue, Hope Mills, North Carolina 28348. Mr. and Mrs. Parker own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 8541 Congressional Avenue, Hope Mills, North Carolina 28348.

lvi. Larry Parsley and Garna Parsley are citizens of North Carolina, residing at 6605 Cedar Oaks Circle, Hope Mills, North Carolina 28348. Mr. and Mrs. Parsley own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 6605 Cedar Oaks Circle, Hope Mills, North Carolina 28348.

lvii. Gene Phillips and Deborah Phillips are citizens of North Carolina, residing at 2340 H. Bollard Road, Hope Mills, North Carolina 28348. Mr. and Mrs. Phillips own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2340 H. Bollard Road, Hope Mills, North Carolina 28348.

lviii. Matthew Philpot and Jill Philpot are citizens of North Carolina, residing at 5936 Turnbull Road, Fayetteville, North Carolina 28312. Mr. and Mrs. Philpot own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 5936 Turnbull Road, Fayetteville, North Carolina 28312.

-19-

lix.  William Pritchard and Rebecca Pritchard are citizens of North Carolina, residing at 2692 McFayden Road, Fayetteville, North Carolina 28306.  Mr. and Mrs. Pritchard own property damaged as a result of the presence of Defendants' PFAS chemicals.  The harmed property includes, but is not limited to, property located at 2692 McFayden Road, Fayetteville, North Carolina 28306.

lx.  William Pugh and Ruth Pugh are citizens of North Carolina, residing at 2716 Creekdew Court, Fayetteville, North Carolina 28306.  Mr. and Mrs. Pugh own property damaged as a result of the presence of Defendants' PFAS chemicals.  The harmed property includes, but is not limited to, property located at 2716 Creekdew Court, Fayetteville, North Carolina 28306.

lxi.  Ronald Ragland and Robin Ragland are citizens of North Carolina, residing at 7600 Dome Road, Hope Mills, North Carolina 28348.  Mr. and Mrs. Ragland own property damaged as a result of the presence of Defendants' PFAS chemicals.  The harmed property includes, but is not limited to, property located at 7600 Dome Road, Hope Mills, North Carolina 28348.

lxii.  Stephen Raines and Deborah Raines are citizens of North Carolina, residing at 2635 Riddle Farm Road, Fayetteville, North Carolina 28306.  Mr. and Mrs. Raines own property damaged as a result of the presence of Defendants' PFAS chemicals.  The harmed property includes, but is not limited to, property located at 2635 Riddle Farm Road, Fayetteville, North Carolina 28306.

lxiii.  Jose Rodriguez and Teresa Rodriguez are citizens of North Carolina, residing at 1937 Pineville Drive, Hope Mills, North Carolina 28348.  Mr. and Mrs. Rodriguez own property damaged as a result of the presence of Defendants' PFAS chemicals.  The harmed property includes, but is not limited to, property located at 1937 Pineville Drive, Hope Mills, North Carolina 28348.

lxiv.  Raymond Rogers and Mary Rogers are citizens of North Carolina, residing at 8046 NC Hwy 87 S, Fayetteville, North Carolina 28306.  Mr. and Mrs. Rogers

own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 8046 NC Hwy 87 S, Fayetteville, North Carolina 28306.

lxv. Aaron Rosenberg and Jody Rosenberg are citizens of North Carolina, residing at 4065 Spanish Oak Drive, Fayetteville, North Carolina 28306. Mr. and Mrs. Rosenberg own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 4065 Spanish Oak Drive, Fayetteville, North Carolina 28306.

lxvi. Michael Ruble and Sara Ruble are citizens of North Carolina, residing at 3036 John McMillan Road, Hope Mills, North Carolina 28348. Mr. and Mrs. Ruble own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 3036 John McMillan Road, Hope Mills, North Carolina 28348.

lxvii. Daniel Smith and Krista Smith are citizens of North Carolina, residing at 6640 Matt Hair Road, Fayetteville, North Carolina 28312. Mr. and Mrs. Smith own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 6640 Matt Hair Road, Fayetteville, North Carolina 28312.

lxviii. Loren Spencer and Melissa Spencer are citizens of North Carolina, residing at 5403 Matt Hair Road, Fayetteville, North Carolina 28312. Mr. and Mrs. Spencer own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 5403 Matt Hair Road, Fayetteville, North Carolina 28312.

lxix. Bryan Spencer and Rebecca Spencer are citizens of North Carolina, residing at 891 Silver Fox Drive, Hope Mills, North Carolina 28348. Mr. and Mrs. Spencer own property damaged as a result of the presence of Defendants'

PFAS chemicals. The harmed property includes, but is not limited to, property located at 891 Silver Fox Drive, Hope Mills, North Carolina 28348.

lxx. Brian Thomas and Patricia Thomas are citizens of North Carolina, residing at 5700 Ione Court, Hope Mills, North Carolina 28348. Mr. and Mrs. Thomas own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 5700 Ione Court, Hope Mills, North Carolina 28348.

lxxi. Raymond Toler Jr. and Tiffany Toler are citizens of North Carolina, residing at 3501 Cedar Hill Drive, Fayetteville, North Carolina 28312. Mr. and Mrs. Toler own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 3501 Cedar Hill Drive, Fayetteville, North Carolina 28312.

lxxii. Daniel Ullom and Vernell Ullom are citizens of North Carolina, residing at 2271 School Road, Hope Mills, North Carolina 28348. Mr. and Mrs. Ullom own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2271 School Road, Hope Mills, North Carolina 28348.

lxxiii. Roland Wheeler, Jr. and Regina Wheeler are citizens of North Carolina, residing at 5081 Tabor Church Road, Fayetteville, North Carolina 28312. Mr. and Mrs. Wheeler own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 5081 Tabor Church Road, Fayetteville, North Carolina 28312.

lxxiv. Roland Wheeler, Sr. and Yvonne Wheeler are citizens of North Carolina, residing at 5067 Tabor Church Road, Fayetteville, North Carolina 28312. Mr. and Mrs. Wheeler own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited

to, property located at 5067 Tabor Church Road, Fayetteville, North Carolina 28312.

lxxv.  Mark Wonderly and Susan Wonderly are citizens of North Carolina, residing at 2182 Cora Drive, Hope Mills, North Carolina 28348. Mr. and Mrs. Wonderly own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2182 Cora Drive, Hope Mills, North Carolina 28348.

lxxvi.  Nathan Yost and Stephanie Yost are citizens of North Carolina, residing at 3365 North Fork Lane, Hope Mills, North Carolina 28348. Mr. and Mrs. Yost own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 3365 North Fork Lane, Hope Mills, North Carolina 28348.

lxxvii.  Chad Barfield is a citizen of North Carolina, residing at 7219 Fire Department Road, Hope Mills, North Carolina 28348. Mr. Barfield owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 7219 Fire Department Road, Hope Mills, North Carolina 28348.

lxxviii.  Arthur Bell is a citizen of North Carolina, residing at 991 Pan Drive, Hope Mills, North Carolina 28348. Mr. Bell owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 991 Pan Drive, Hope Mills, North Carolina 28348.

lxxix.  Ronald Benson is a citizen of North Carolina, residing at 5893 Dudley Road, Fayetteville, North Carolina 28312. Mr. Benson owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 5893 Dudley Road, Fayetteville, North Carolina 28312.

lxxx.    Gerald Black is a citizen of North Carolina, residing at 2366 Chicken Foot Road, Hope Mills, North Carolina 28348. Mr. Black owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2366 Chicken Foot Road, Hope Mills, North Carolina 28348.

lxxxi.   Patricia Brogdon-Wilcox is a citizen of North Carolina, residing at 2705 Creekdew Court, Fayetteville, North Carolina 28306. Ms. Brogdon-Wilcox owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2705 Creekdew Court, Fayetteville, North Carolina 28306.

lxxxii.  William Brown Jr. is a citizen of North Carolina, residing at 3492 Thrower Road, Hope Mills, North Carolina 28368. Mr. Brown owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 3492 Thrower Road, Hope Mills, North Carolina 28368.

lxxxiii. Deborah Burney is a citizen of North Carolina, residing at 2592 McFayden Road, Fayetteville, North Carolina 28306. Ms. Burney owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2592 McFayden Road, Fayetteville, North Carolina 28306.

lxxxiv.  Pany Butler is a citizen of North Carolina, residing at 6800 County Place Drive, Hope Mills, North Carolina 28348. Mrs. Butler owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 6800 County Place Drive, Hope Mills, North Carolina 28348.

lxxxv.   Heather Callihan is a citizen of North Carolina, residing at 4765 Jackie Hood Lane, Fayetteville, North Carolina 28312. Ms. Callihan owns property

-24-

Case 5:20-cv-00208-D   Document 1   Filed 05/20/20   Page 24 of 69

damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 4765 Jackie Hood Lane, Fayetteville, North Carolina 28312.

lxxxvi.  Kim Canady is a citizen of North Carolina, residing at 1636 John McMillan Road, Hope Mills, North Carolina 28348. Ms. Canady owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 1636 John McMillan Road, Hope Mills, North Carolina 28348.

lxxxvii.  Maria Canas is a citizen of North Carolina, residing at 8034 Kalmia Lane, Hope Mills, North Carolina 28348. Ms. Canas owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 8034 Kalmia Lane, Hope Mills, North Carolina 28348.

lxxxviii.  Lynette Carmona is a citizen of North Carolina, residing at 7247 River Road, White Oak, North Carolina 28399. Ms Carmona owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 7247 River Road, White Oak, North Carolina 28399.

lxxxix.  Julian Clemenger is a citizen of North Carolina, residing at 2547 McFayden Road, Fayetteville, North Carolina 28306. Mr. Clemenger owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2547 McFayden Road, Fayetteville, North Carolina 28306.

xc.  Mickey Clevidence is a citizen of North Carolina, residing at 4628 Horne St., Fayetteville, North Carolina 28312. Mr. Clevidence owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed

-25-

property includes, but is not limited to, property located at 4628 Horne St., Fayetteville, North Carolina 28312.

xci. Louanna Cordova is a citizen of North Carolina, residing at 5542 Matt Hair Road, Fayetteville, North Carolina 28312. Ms. Cordova owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 5542 Matt Hair Road, Fayetteville, North Carolina 28312.

xcii. Samuel Council is a citizen of North Carolina, residing at 3690 Turner Road, Fayetteville, North Carolina 28306. Mr. Council owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 3690 Turner Road, Fayetteville, North Carolina 28306.

xciii. James T. Council is a citizen of North Carolina, residing at 9080 River Road, White Oak, North Carolina 28399. Mr. Council owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 9080 River Road, White Oak, North Carolina 28399.

xciv. Steven Dion is a citizen of North Carolina, residing at 2715 NC Hwy 20, St. Pauls, North Carolina 28384. Mr. Dion owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2715 NC Hwy 20, St. Pauls, North Carolina 28384.

xcv. Wanda Evans is a citizen of North Carolina, residing at 2281 Solomons Pass, Hope Mills, North Carolina 28348. Ms. Evans owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2281 Solomons Pass, Hope Mills, North Carolina 28348.

xcvi. Vonda Floyd is a citizen of North Carolina, residing at 2344 H. Bullard Road, Hope Mills, North Carolina 28348. Ms. Floyd owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2344 H. Bullard Road, Hope Mills, North Carolina 28348.

xcvii. Steve Fogleman is a citizen of North Carolina, residing at 4579 Kirk Shaw Road, Hope Mills, North Carolina 28348. Mr. Fogleman owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 4579 Kirk Shaw Road, Hope Mills, North Carolina 28348.

xcviii. Delois Gamble is a citizen of North Carolina, residing at 2364 H. Bullard Road, Hope Mills, North Carolina 28348. Ms. Gamble owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2364 H. Bullard Road, Hope Mills, North Carolina 28348.

xcix. Leticia Gilmore is a citizen of North Carolina, residing at 7016 Pope Cashwell Court, Hope Mills, North Carolina 28348. Ms. Gilmore owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 7016 Pope Cashwell Court, Hope Mills, North Carolina 28348.

c. Gregory Hair is a citizen of North Carolina, residing at 5442 Matt Hair Road, Fayetteville, North Carolina 28312. Mr. Hair owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 5442 Matt Hair Road, Fayetteville, North Carolina 28312.

ci. James Harris is a citizen of North Carolina, residing at 2710 Culbreth Road, Fayetteville, North Carolina 28312. Mr. Harris owns property damaged as a

result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2710 Culbreth Road, Fayetteville, North Carolina 28312.

cii. Charles Hayes is a citizen of North Carolina, residing at 3033 Thrower Road, Hope Mills, North Carolina 28348. Mr. Hayes owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 3033 Thrower Road, Hope Mills, North Carolina 28348.

ciii. Ronald Hensley is a citizen of North Carolina, residing at 960 Pan Drive, Hope Mills, North Carolina 28348. Mr. Hensley owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 960 Pan Drive, Hope Mills, North Carolina 28348.

civ. Willie Herndon is a citizen of North Carolina, residing at 8141 NC Hwy 87 South, Fayetteville, North Carolina 28306. Mr. Herndon owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 8141 NC Hwy 87 South, Fayetteville, North Carolina 28306.

cv. Donna Hultberg is a citizen of North Carolina, residing at 3133 Thrower Road, Hope Mills, North Carolina 28348. Ms. Hultberg owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 3133 Thrower Road, Hope Mills, North Carolina 28348.

cvi. Brian Jones is a citizen of North Carolina, residing at 2725 Culbreth Road, Fayetteville, North Carolina 28312. Mr. Jones owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property

-28-

includes, but is not limited to, property located at 2725 Culbreth Road, Fayetteville, North Carolina 28312.

cvii. Christopher Jones is a citizen of North Carolina, residing at 2436 Chicken Foot Road, Hope Mills, North Carolina 28348. Mr. Jones owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2436 Chicken Foot Road, Hope Mills, North Carolina 28348.

cviii. Thomas Keister is a citizen of North Carolina, residing at 3541 County Line Road, Fayetteville, North Carolina 28306. Mr. Keister owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 3541 County Line Road, Fayetteville, North Carolina 28306.

cix. Velda Kester is a citizen of North Carolina, residing at 3835 Heartpine Drive, Fayetteville, North Carolina 28306. Ms. Kester owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 3835 Heartpine Drive, Fayetteville, North Carolina 28306.

cx. Michelle Key is a citizen of North Carolina, residing at 6979 Point East Drive, Fayetteville, North Carolina 28306. Mrs. Key owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 6979 Point East Drive, Fayetteville, North Carolina 28306.

cxi. Denise Kirk is a citizen of North Carolina, residing at 2879 Blossom Road, Hope Mills, North Carolina 28348. Ms. Kirk owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2879 Blossom Road, Hope Mills, North Carolina 28348.

cxii. Gertrude Kirk is a citizen of North Carolina, residing at 4637 Kirk Shaw Road, Hope Mills, North Carolina 28348. Ms. Kirk owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 4637 Kirk Shaw Road, Hope Mills, North Carolina 28348.

cxiii. James Kussman and Dawn Kussman are citizens of North Carolina, residing at 6980 County Place Drive, Hope Mills, North Carolina 28348. Mr. and Mrs. Kussman own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 6980 County Place Drive, Hope Mills, North Carolina 28348.

cxiv. Patricia Leadbeater is a citizen of North Carolina, residing at 2677 County Line Road, St. Pauls, North Carolina 28384. Ms. Leadbeater owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2677 County Line Road, St. Pauls, North Carolina 28384.

cxv. Joseph Maitland is a citizen of North Carolina, residing at 1632 Yarborough Road, Parkton, North Carolina 28371. Mr. Maitland owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 1632 Yarborough Road, Parkton, North Carolina 28371.

cxvi. Michael McLamb is a citizen of North Carolina, residing at 3345 Chicken Foot Road, Hope Mills, North Carolina 28348. Mr. McLamb owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 3345 Chicken Foot Road, Hope Mills, North Carolina 28348.

cxvii. Gary Mitchell is a citizen of North Carolina, residing at 1052 John McMillan Road, Hope Mills, North Carolina 28348. Mr. Mitchell owns property

-30-

damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 1052 John McMillan Road, Hope Mills, North Carolina 28348.

cxviii. Rebecca Montaldo is a citizen of North Carolina, residing at 4810 Cedar Creek Road, Fayetteville, North Carolina 28312. Ms. Montaldo owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 4810 Cedar Creek Road, Fayetteville, North Carolina 28312.

cxix. Carla Montemayor is a citizen of North Carolina, residing at 2047 Teesdale Drive, Hope Mills, North Carolina 28348. Ms. Montemayor owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2047 Teesdale Drive, Hope Mills, North Carolina 28348.

cxx. Paul Morris is a citizen of North Carolina, residing at 4541 Sullivan Drive, Fayetteville, North Carolina 28312. Mr. Morris owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 4541 Sullivan Drive, Fayetteville, North Carolina 28312.

cxxi. Candice Odom is a citizen of North Carolina, residing at 6073 Midus Street, Hope Mills, North Carolina 28348. Ms. Odom owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 6073 Midus Street, Hope Mills, North Carolina 28348.

cxxii. Malenna Orndorf is a citizen of North Carolina, residing at 6123 Tabor Church Road, Fayetteville, North Carolina 28312. Ms. Orndorf owns property damaged as a result of the presence of Defendants' PFAS chemicals. The

harmed property includes, but is not limited to, property located at 6123 Tabor Church Road, Fayetteville, North Carolina 28312.

cxxiii. Hubert Parker Jr. is a citizen of North Carolina, residing at 3814 Critter Creek Road, Fayetteville, North Carolina 28306. Mr. Parker owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 3814 Critter Creek Road, Fayetteville, North Carolina 28306.

cxxiv. Matthew Pierce is a citizen of North Carolina, residing at 6190 King Hiram Road, Hope Mills, North Carolina 28348. Mr. Pierce owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 6190 King Hiram Road, Hope Mills, North Carolina 28348.

cxxv. Karen Price is a citizen of North Carolina, residing at 2042 Teesdale Drive, Hope Mills, North Carolina 28348. Ms. Price owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2042 Teesdale Drive, Hope Mills, North Carolina 28348.

cxxvi. Leonard Pryor is a citizen of North Carolina, residing at 3539 Thrower Road, Hope Mills, North Carolina 28348. Mr. Pryor owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 3539 Thrower Road, Hope Mills, North Carolina 28348.

cxxvii. David Stephens is a citizen of North Carolina, residing at 2250 Shaw Mill Road, St. Pauls, North Carolina 28384. Mr. Stephens owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2250 Shaw Mill Road, St. Pauls, North Carolina 28384.

-32-

cxxviii. Bernette Thaggard is a citizen of North Carolina, residing at 7247 River Road, White Oak, North Carolina 28399. Ms. Thaggard owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 7247 River Road, White Oak, North Carolina 28399.

cxxix. Bernice Thaggard is a citizen of North Carolina, residing at 7247 River Road, White Oak, North Carolina 28399. Ms. Thaggard owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 7247 River Road, White Oak, North Carolina 28399.

cxxx. Mary Thaggard is a citizen of North Carolina, residing at 4319 Graye Fryers Lane, Fayetteville, North Carolina 28312. Mrs. Thaggard owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 4319 Graye Fryers Lane, Fayetteville, North Carolina 28312.

cxxxi. Steven Thompson is a citizen of North Carolina, residing at 5215 Sunset View Road, Fayetteville, North Carolina 28306. Mr. Thompson owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 5215 Sunset View Road, Fayetteville, North Carolina 28306.

cxxxii. Nellie Warren is a citizen of North Carolina, residing at 5135 Tabor Church Road, Fayetteville, North Carolina 28312. Ms. Warren owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 5135 Tabor Church Road, Fayetteville, North Carolina 28312.

cxxxiii. Maria Watson is a citizen of North Carolina, residing at 2316 Pridgeon Farm Road, Fayetteville, North Carolina 28306. Ms. Watson owns property

damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2316 Pridgeon Farm Road, Fayetteville, North Carolina 28306.

cxxxiv. Craig Wayman and Wendy Wayman are citizens of North Carolina, residing at 2548 McFayden Rd, Fayetteville, North Carolina 28306. Mr. and Mrs. Wayman own property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2548 McFayden Rd, Fayetteville, North Carolina 28306.

cxxxv. Robert Wesselman is a citizen of North Carolina, residing at 7346 Chessy Lane, Saint Pauls, North Carolina 28384. Mr. Wesselman owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 7346 Chessy Lane, Saint Pauls, North Carolina 28384.

cxxxvi. Terrence White is a citizen of North Carolina, residing at 2910 Strata Drive, Hope Mills, North Carolina 28348. Ms. White owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2910 Strata Drive, Hope Mills, North Carolina 28348.

cxxxvii. Gregory Wilkerson is a citizen of North Carolina, residing at 2824 Ally Rayven Drive, Fayetteville, North Carolina 28306. Mr. Wilkerson owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 2824 Ally Rayven Drive, Fayetteville, North Carolina 28306.

cxxxviii. Christopher Williams is a citizen of North Carolina, residing at 7198 Henry Smith Road, St. Pauls, North Carolina 28384. Mr. Williams owns property damaged as a result of the presence of Defendants' PFAS chemicals. The

harmed property includes, but is not limited to, property located at 7198 Henry Smith Road, St. Pauls, North Carolina 28384.

cxxxix.   Richard Young is a citizen of North Carolina, residing at 6821 County Place Drive, Hope Mills, North Carolina 28348. Mr. Young owns property damaged as a result of the presence of Defendants' PFAS chemicals. The harmed property includes, but is not limited to, property located at 6821 County Place Drive, Hope Mills, North Carolina 28348.

12.   Defendant E.I. DU PONT DE NEMOURS AND COMPANY ("DuPont") is a Delaware corporation with its principal place of business in Wilmington, Delaware, and is registered to do business as a foreign corporation in the State of North Carolina. DuPont owned and operated the Fayetteville Works facility from approximately 1971 until 2015 and currently leases a portion of the site from Defendant Chemours Company FC, LLC.

13.   Defendant THE CHEMOURS COMPANY is a Delaware corporation with its principal place of business in Wilmington, Delaware, and is registered to do business as a foreign corporation in the State of North Carolina.

14.   Defendant THE CHEMOURS COMPANY FC, LLC is a Delaware limited liability corporation with its principal place of business in Wilmington, Delaware, and is registered to do business as a foreign corporation in the State of North Carolina. THE CHEMOURS COMPANY FC, LLC currently owns and operates the Fayetteville Works Facility, located at 22828 NC Highway 87 W., Fayetteville, North Carolina. THE CHEMOURS COMPANY FC, LLC is a subsidiary of THE CHEMOURS COMPANY and the two entities are referred to in this Complaint as "Chemours."

III.   JURISDICTION AND VENUE

15.   This Court has jurisdiction pursuant to 28 U.S.C. §1332 because complete diversity exists between the Plaintiffs and the Defendants. The Plaintiffs are citizens of North Carolina, but no Defendant is a citizen of North Carolina. Defendants are incorporated and maintain principal places of business in locations other than North Carolina, as outlined above.

-35-

16.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. §1391(a) because a substantial part of the property that is the subject of the action is situated in this judicial district and division.

## IV.     FACTUAL ALLEGATIONS

### A. Historical Background

17.     From 1951 through 2002, DuPont purchased the perfluorinated chemical PFOA (also known as "C8") from the 3M Company and used it to make a variety of "fluoroproducts," including the immensely-popular Teflon® nonstick cookware, at its Washington Works plant near Parkersburg, West Virginia.

18.     C8 is a perfluorinated chemical that is toxic to human health, biopersistent, and bioaccumulative -- characteristics DuPont concealed for decades.

19.     Although both 3M and DuPont had found C8 in blood samples from their own employees, and DuPont had itself been studying its potential toxicity since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River, neither company disclosed to the public or to government regulators what they knew about the substance's potential effects on humans, animals, or the environment.[10]

20.     In 1999, the first of thousands of civil lawsuits was filed as a result of DuPont's contamination of the Ohio River, questioning the environmental and health effects of C8. The civil lawsuit -- and the internal corporate knowledge it revealed -- triggered an investigation by the EPA of the toxicity of C8.

21.     In the face of growing pressure by the EPA over widespread risks to human health and the environment posed by C8, 3M began to phase out the manufacturing of C8 in 2000. That year, DuPont made an estimated $200 million in after-tax profits from products manufactured with C8.[11]

---

[10] *See, e.g.,* Fred Biddle, "DuPont confronted over chemical's safety," *Wilmington News Journal* (Apr. 13, 2003).

[11] See Biddle, *supra* note 10.

-36-

22.     In May 2002, 3M announced that it would cease to manufacture C8 altogether. In October 2002 -- so that it could continue manufacturing a range of profitable Teflon® products -- DuPont began making C8 at its Fayetteville Works facility and shipping its C8 waste to its Chambers Works plant in New Jersey, for disposal into the waters of the Delaware River and Delaware Bay. DuPont publicly maintained that disposing of C8 into the waters there posed no environmental risks, and that there was "no evidence" C8 causes adverse human health effects.[12]

23.     By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of C8, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History."[13] The EPA fined DuPont for violating the Toxic Substances Control Act "Section 8(e) -- the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."[14]

24.     Thereafter in 2006, the EPA began a voluntary PFOA Stewardship Program, in which DuPont participated, designed to prevent C8 from further entering the environment and to eliminate C8 from consumer products by 2015. At that time, DuPont identified another perfluorinated chemical -- PFPrOPrA[15] or "GenX" -- that could be used as an alternative to C8.

25.     By 2009, DuPont negotiated with the EPA to manufacture GenX at DuPont's Fayetteville Works facility in North Carolina -- the same plant where DuPont had continued the manufacture of C8 despite incriminating evidence of its environmental and health effects. The EPA "determined that the chemical could be commercialized *if there were no releases to water.*"[16]

---

[12] See Biddle, *supra* note 10.
[13] $16.5 million. https://www.epa.gov/enforcement/reference-news-release-epa-settles-pfoa-case-against-dupont-largest-environmental (last accessed May 8, 2020).
[14] https://www.epa.gov/enforcement/reference-news-release-epa-settles-pfoa-case-against-dupont-largest-environmental (last accessed May 8, 2020)
[15] Perfluoro-2-propoxypropanoic acid, CAS No. 13252-13-6.
[16] Vaughn Haugherty, "Toxin taints CFPUA drinking water," *StarNews* (June 8, 2017), http://www.starnewsonline.com/news/20170607/toxin-taints-cfpua-drinking-water/1 (last accessed May 8, 2020).

-37-

26.     Meanwhile, by July 2011, DuPont could no longer credibly dispute the human toxicity of C8, which it continued to manufacture at the Fayetteville Works facility. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from the Washington Works plant had reviewed the available scientific evidence and notified DuPont of a "probable link"[17] between C8 exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia.[18] By October 2012, the C8 Science Panel had notified DuPont of a probable link between C8 and five other conditions -- high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

27.     By April 28, 2013,[19] in accordance with EPA's PFOA Stewardship Program, Defendants reported they had phased out the intentional manufacture of C8 at the Fayetteville Works facility, instead manufacturing "GenX" as an alternative product to use in making Teflon®.

28.     As DuPont's C8 liabilities mounted, DuPont became desperate to reduce its perfluorinated chemical liabilities and decided to spin-off its perfluorinated chemical operations into a new company. In July 2015, E.I. du Pont de *Nemours* spun off its *chemicals* division, creating *Chemours*, a new publicly-traded company named The Chemours Company, once wholly owned by DuPont. By mid- 2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of the new Chemours Company.

29.     In May 2016, *Fortune* magazine wrote, "When industrial giant DuPont spun off its performance chemicals division in July 2015, few gave the orphaned appendage much hope. Loaded up with debt and stuffed full of potentially toxic assets -- on multiple levels -- the new company, re-branded as Chemours, was seen by many investors as a listing garbage scow locked

---

[17] Under the settlement, "probable link," means that given the available scientific evidence, it is more likely than not that among class members a connection exists between PFOA/C8 exposure and a particular human disease.

[18] *See* The C8 Science Panel, *Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8 Health Project* (July 15, 2011), http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf (last accessed May 8, 2020)

[19] *See* "Corrective Measures Study Work Plan," Chemours Fayetteville Works, RCRA Permit No. NCD047368642-R2-M3, PARSONS, December 2016 (hereinafter, "Parsons").

on a one-way course to the bottom of the ocean." "So while Chemours products made up around a fifth of DuPont's overall sales when it was spun off, it ended up inheriting nearly two-thirds of its environmental liabilities. Pending lawsuits linked to a chemical used in making Teflon, one of Chemours' biggest products, now sits on its balance sheet like a ticking time bomb, threatening to wipe out millions of dollars from the company's coffers over the next few years."[20]

30. By 2017, over 3,500 civil lawsuits had been filed against DuPont for C8 contamination of the Ohio River and the drinking water of nearly 70,000 residents in and around Parkersburg, West Virginia. DuPont had settled the first round of civil cases for nearly $350 million in 2001, resolving water filtration claims, and funding epidemiological health studies of the nearly 70,000 residents. Then, in February 2017, DuPont and Chemours settled the second round of cases for nearly $671 million, resolving thousands of personal injury claims for exposure to C8 via drinking water drawn from the contaminated Ohio River. All told, DuPont and Chemours will pay over $1 billion to resolve the C8 liabilities related to Ohio River contamination.

31. As a result of the 2015 Chemours spin-off, Defendant Chemours Company FC, LLC, now owns and operates the Fayetteville Works facility, leasing space to two other chemical manufacturers, Defendant DuPont and non-party Kuraray America, Inc.

32. At the Fayetteville Works facility, DuPont and Chemours have long made, used, and/or generated a variety of toxic PFASs that are structurally and functionally similar, including C8, GenX ("C6"), "Nafion Byproducts 1 and 2" ("C7")[21], and PFECAs. Cumulatively, this complaint refers to the various perfluorinated chemicals compounds originating from the Fayetteville Works facility as PFAS(s) (per- and polyfluoroalkyl substances).

**B. The Fayetteville Works Site**

33. The Fayetteville Works facility ("the Site") is located at 22828 NC Highway 87 W, near Duart Township in Bladen County, North Carolina. The Site is located 15 miles southeast

---

[20] http://fortune.com/2016/05/18/how-dupont-spinoff-chemours-came-back-from-the-brink/ (last accessed May 8, 2020).
[21] "C6" and "C7" refer to the number of carbons in the perfluorinated molecules.

-39-

of the City of Fayetteville on NC Highway 87, south of the Bladen-Cumberland county line. Its geographic location is 34º50'30" north latitude, 78º50'00" west longitude. The Site contains 2,177 acres and is bounded on the east by the Cape Fear River, on the west by NC Highway 87.[22] The Site is bounded on the north and south by residences and farmland.

34.     DuPont purchased the Site property in parcels from several families in 1970. The Site's first manufacturing area was constructed in the early 1970s. Currently, the Site manufactures plastic sheeting, safety glass, fluorochemicals, and intermediates for plastics manufacturing. A former manufacturing area, which was sold in 1992, produced nylon strapping and elastomeric tape.[23]

35.     In July 2015, Defendant Chemours Company FC, LLC, became the owner of the entire 2,177 acres of the Fayetteville Works along with Fluoromonomers, Nafion® membranes, and PPA manufacturing units. The polyvinyl fluoride (PVF) resin manufacturing unit remained with the DuPont Company.[24]

36.     Defendants' manufacturing operations at the Site[25] consist of three current perfluorinated chemical ("PFC") manufacturing areas and a former manufacturing area:[26]

    a.    <u>Chemours Fluoromonomers and Nafion® Membrane</u> - Manufactures Nafion® fluoropolymer membrane -- a perfluorosulfonic acid (PFSA) membrane -- for use in electronic cells, as well as various fluorochemicals used for Nafion® membrane, Teflon® fluoropolymer, Viton® elastomers, and other fluorinated products.

    b.    <u>Chemours Polymer Processing Aid (PPA)</u> - Manufactures a fluorochemical that is used as a processing aid for off-site fluoropolymer manufacturing -- upon information and belief, the product known as "GenX." This area formerly

_____

[22] Parsons, *supra* note 19.
[23] *Id.*
[24] *Id.*
[25] In two additional manufacturing areas at the Fayetteville Works, Kuraray America manufactures Butacite polyvinyl butyral sheeting and resin, and SentryGlass-branded safety glass products, but upon information and belief does not use or generate the polyfluorinated chemicals at issue.
[26] Parsons, *supra* note 19.

manufactured ammonium perfluorooctanoate (APFO, the ammonium salt of PFOA, which is also known as "C8"). Chemours publicly maintains that the last date of C8 production at the Site was April 28, 2013, and that the C8 manufactured in this area was never used in any of the other manufacturing facilities at the Site.

      c.    <u>DuPont Company PVF</u> - Manufacturers polyvinyl fluoride (PVF) resin used to produce Tedlar® film.

      d.    <u>The Polymer Manufacturing Development Facility (PMDF)</u> - Manufactured Teflon® fluorinated ethylene propylene (FEP) for electrical wiring insulation and other applications. Since the PMDF unit was permanently shut down in June 2009, it no longer manufactures DuPont Teflon®. Chemours publicly maintains that the site did not use C8 in its processes.

37.    In addition to the manufacturing operations at the Site, Chemours operates two natural gas-fired boilers and a wastewater treatment plant for the treatment of process and sanitary wastewaters from Chemours and DuPont. Hazardous wastes generated from the Chemours manufacturing processes and laboratories were, as of 2016, managed at the permitted Hazardous Waste Container Storage Area, in four permitted hazardous waste tanks, and at the 90-day ignitable waste accumulation area prior to being shipped offsite for treatment, disposal, or recycling.[27]

38.    The Cape Fear River is located along the eastern property boundary of the Site, approximately 1,850 feet from the eastern portion of the manufacturing area. Willis Creek, a tributary of the Cape Fear River, is located in the northern portion of the Site, approximately 3,000 feet from the manufacturing area. Portions of the Georgia Branch, another tributary to the Cape Fear River, flow along the southern boundary of the Site approximately 1 mile southwest of the manufacturing area. A drainage channel leading to the Cape Fear River is located just south

---

[27] *Id.*

of the plant area and is used as the outfall area ("Outfall 2") covered by National Pollutant Discharge Elimination System Permit No. NC003573 (the "NPDES Permit").[28]

39.     Underneath the Site, groundwater flow is generally west-southwest to east-northeast, discharging into the Cape Fear River.

40.     Upon information and belief, Defendants' discharge of GenX and other perfluorinated chemicals into the soil and groundwater at the Site, the Cape Fear River, and the air resulted in contamination of Plaintiffs' property.

**C. Defendants' Pollution of Groundwater and the Cape Fear River**

41.     In 1980 -- unbeknownst to state or federal regulators or the public -- DuPont began to release GenX (C6) at the Fayetteville Works site as a byproduct of one or more of its manufacturing processes there, including, upon information and belief, a vinyl ether manufacturing process. At a point in time that is as yet unknown, DuPont also began to release other PFASs (in addition to GenX) from the Fayetteville Works site, including PFOA (C8), Nafion® Byproducts 1 and 2 (C7) and PFECAs.[29] Indeed, upon information and belief, there are *hundreds* of different PFASs generated in DuPont's manufacturing processes, and an unknown number of these have also been discharged into the soil, air, and groundwater surrounding Fayetteville Works, as well as into the Cape Fear River.

42.     Defendants were required to obtain a NPDES Permit from the State of North Carolina before making an outlet into the Cape Fear River or causing or permitting any waste to be directly or indirectly discharged into waters of the state in violation of any State water quality standards or point source effluent standards or limits. *See* 33 U.S.C. §§ 1311, 1342; N.C. Gen Stat. § 143-215.1.

43.     In 1987, DuPont obtained its initial NPDES Permit No. NC003573 from the State of North Carolina,[30] authorizing the release of wastewaters from the facility wastewater treatment

---

[28] *Id.*

[29] Perfluoroalkyl ether carbocyclic acids, a type of PFASs that includes GenX.

[30] At the time, the regulating entity was known as the North Carolina Department of Environment & Natural Resources, Division of Water Quality. It is now known as the Department of Environmental Quality (DEQ), Division of Water Resources (DWR).

-42-

plant through Outfall 002, which feeds into the Cape Fear River. Upon information and belief, DuPont did not disclose to the State that it planned to discharge GenX, C8, or any other PFAS to the Cape Fear River, nor did it disclose the number, variety or identity of the many PFAS chemicals generated in its processes and found in its waste streams.

44.     The segments of the Cape Fear River impacted by discharges from Outfall 002 include segments classified by the State of North Carolina as Class WS-IV and Class WS-IV CA (critical area).  The designated uses in these segments include "source of water supply for drinking, culinary, or food-processing purposes" as well as "aquatic life propagation and maintenance of biological integrity (including fishing and fish), wildlife, secondary recreation, [and] agriculture," 15A N.C.A.C. 2B.0211(1), 2B.0216(1); *see also* 15A N.C.A.C. 2B.0101; N.C. Gen. Stat. § 143-214.1(b).  "Critical area means the area adjacent to a water supply intake or reservoir where risk associated with pollution is greater than from the remaining portions of the watershed." 15A N.C.A.C. 2B .0202(20).

45.     Upon information and belief, DuPont's (and now Chemours') on-site wastewater treatment plant is ineffective at entirely removing GenX and other PFASs in the water that is discharged into the Cape Fear River.

46.     In 1995, DuPont asked the State of North Carolina for permission to reroute wastewater from its Nafion® manufacturing area to bypass the facility wastewater treatment plant. At this time, upon information and belief, DuPont knew that the wastewater it planned to discharge contained GenX and other PFAS byproducts of the Nafion® manufacturing process. Although DuPont had a duty under North Carolina law and federal law to clearly identify in its NPDES permit application any potential toxins, the only waste DuPont disclosed was fluoride. Upon information and belief, the request to release Nafion® process wastewater directly into the Cape Fear River was authorized in DuPont's 1996 NPDES Permit renewal.

47.     In May 2001, following 3M Company's announcement that it would no longer manufacture C8, DuPont submitted an NPDES Permit renewal application to the State of North Carolina stating that it intended to begin manufacturing C8 at the Fayetteville Works Site.

-43-

DuPont represented to the State that C8 does not pose a health concern to humans or animals at the levels present in the workplace or environment, that DuPont had used C8 for forty years with no observed health effects, and that C8 is neither a known developmental toxin nor a known carcinogen. DuPont requested authorization to discharge wastewater from its C8 operations directly to a dedicated outfall, without sending it through the facility's wastewater treatment plant. At this time, DuPont did not disclose that its manufacturing processes at the Fayetteville Works site in fact generated hundreds of PFASs, nor did it disclose the number, variety or identity of the PFASs found in its waste streams.

48. In October 2002 -- before the State granted the requested NPDES Permit renewal -- DuPont began making C8 at the Fayetteville Works site. In January 2004, the State granted the renewed NPDES permit -- without authorizing the requested discharge of the C8 manufacturing wastewater into the Cape Fear River.

49. DuPont applied for its next NPDES renewal permit on May 1, 2006. DuPont's application represented that wastewater from the C8 manufacturing operations "is collected and shipped off-site for disposal"; that no process wastewater is discharged to the Site's wastewater treatment plant or to the Cape Fear River, and that none of the produced C8 is used at the Fayetteville Works site. DuPont further represented that wastewater from the Nafion® operations was being treated in the facility's wastewater treatment plant. Upon information and belief, DuPont did not disclose that it was releasing any C8, GenX or other PFECAs, or other perfluoroalkyl byproducts of its Nafion® operations, into the Cape Fear River. Nor did DuPont disclose the number, variety or identity of the PFAS chemicals generated in its processes and found in its waste streams.

50. The State granted a renewed NPDES permit on May 25, 2007. Under this permit, DuPont was required to capture and dispose of all C8 process water off-site, and also to monitor for C8 due to known groundwater contamination. The resulting monitoring reports document discharges and/or releases of C8 into the Cape Fear River through at least March 2017, when Chemours reported PFOA (C8) discharges of 10,000 parts per trillion (ppt) through Outfall 002.

-44-

Indeed, even after Chemours reportedly stopped making C8 at the Fayetteville Works site in 2013, regular discharges of C8 at Outfall 002 continued, reaching as high as 160,000 ppt in October 2016, despite dilution of the effluent with non-contact river water.

51.     On January 28, 2009, DuPont entered into a consent order with the EPA governing the manufacturing of GenX. The consent order acknowledged that EPA "has concerns that [GenX] will persist in the environment, could bioaccumulate, and be toxic . . . to people, wild animals, and birds." The consent order also acknowledged EPA's "human health concerns" about GenX, including that "uncontrolled . . . disposal of [GenX] may present an unreasonable risk of injury to human health and the environment." The order required DuPont to "recover and capture (destroy) or recycle [GenX] at an overall efficiency of 99% from all of the effluent process streams and the air emissions (point source and fugitive)." In negotiating the Consent Order, upon information and belief, neither DuPont (nor, apparently, its lawyers) disclosed to the EPA that DuPont had been releasing GenX (and other related PFASs) into the Cape Fear River from the Fayetteville Works site since at least 1980. And once more, DuPont remained silent about the number, variety and identity of the PFAS chemicals generated in its processes and found in its waste streams. Upon information and belief, DuPont met with North Carolina regulators in August 2010 and represented (1) that -- like C8 -- GenX would be produced in a "closed-loop" system that would not result in the discharge of GenX into the Cape Fear River; and (2) that the wastewater generated from GenX manufacturing would be collected and shipped off-site for disposal. DuPont did not disclose to the State that it had already been discharging GenX or other PFECAs, or other perfluoroalkyl byproducts from its Nafion® processes into the Cape Fear River.  Nor did DuPont disclose to regulators the number, variety and identity of the PFAS chemicals generated in its processes and found in its waste streams.

52.     Upon information and belief, DuPont met with North Carolina regulators in August 2010 and represented (1) that -- like C8 -- GenX would be produced in a "closed-loop" system that would not result in the discharge of GenX into the Cape Fear River; and (2) that the wastewater generated from GenX manufacturing would be collected and shipped off-site for

-45-

disposal. DuPont did not disclose to the State that it had already been discharging GenX or other PFECAs, or other perfluoroalkyl byproducts from its Nafion® processes into the Cape Fear River. Nor did DuPont disclose to regulators the number, variety and identity of the PFAS chemicals generated in its processes and found in its waste streams.

53. The following year, in April 2011, DuPont applied for a renewal of its NPDES Permit, confirming that "all process wastewater generated from [the PPA Manufacturing Area where DuPont produced C8 and GenX] is collected and shipped offsite for disposal" and "no process wastewater from this manufacturing facility is discharged to the site's biological [wastewater treatment plant] or to the Cape Fear River." DuPont continued to mislead regulators, failing to explain that the Fayetteville Works operations had been contaminating the Cape Fear River with PFASs such as GenX and Nafion® Byproducts 1 and 2 since approximately 1980, and failing to disclose the number, variety or identity of the PFAS chemicals generated in its processes and found in its waste streams, even though DuPont knew that regulators had serious concerns about the effects of these substances on human health and understood that its discharges were contaminating the drinking water used by hundreds of thousands of North Carolinians. In fact, at the very same time DuPont was reassuring the State about its "closed system" for manufacturing GenX, upon information and belief, DuPont was discharging GenX and other perfluoroalkyl byproducts of its Nafion® and other manufacturing processes into the Cape Fear River, soil, groundwater, and into the air on an ongoing basis.

54. On February 6, 2012, the State of North Carolina issued the NPDES renewal permit to DuPont and transferred the permit to Chemours on October 28, 2015. The Permit does not authorize any discharges of GenX or other PFECAs or other PFASs (including perfluoroalkyl byproducts of the Nafion® processes from the Fayetteville Works site).

55. DuPont conducted a Resource Conservation and Recovery Act Facility Investigation (RFI), in three phases from 2001 through 2014. The RFI identified widespread C8 contamination in the soil and groundwater at the Fayetteville Works site, some of which DuPont attributed to its past Nafion® manufacturing activities, including a "historical release originating

-46-

from the Nafion® manufacturing area's common process wastewater sump."[31] The RFI also documented at least seven releases of PFASs at the Fayetteville Works site between March 2011 and February 2013.

56. In 2015, State regulators required Chemours to perform additional groundwater sampling to determine if groundwater flowing from the Fayetteville Works site was contaminating the Cape Fear River with C8 or other PFASs. Chemours still did not disclose to regulators that the Fayetteville Works operations had been contaminating the Cape Fear River with PFASs such as GenX and Nafion® Byproducts 1 and 2 since approximately 1980, nor did it test the groundwater wells of individuals living near the Site for those chemicals until 2017. Upon information and belief, Chemours identified both C8 and other PFASs in its groundwater, but only disclosed to the State (at the time) that it had found C8.

57. At least by 2015, and reportedly by April 2013, Defendants ceased manufacturing C8 at the Fayetteville Works site.

58. Defendants have continued to manufacture and use other PFASs. As a result, Defendants continue to release a number of PFASs from the Fayetteville Works site directly into groundwater beneath the property and the Cape Fear River.

59. At all relevant times, Defendants knew, or should have known, that the PFASs they were releasing into the environment created a probable risk of property damage and to human health to those individuals living near the Site.

**D. Defendants' pollution through air emissions**

60. The Site also has multiple stacks that have operated over the years as a source for airborne emissions of PFASs, thereby giving rise to additional property contamination when airborne particles are deposited in soil and vegetation, and dissolve and/or leach into groundwater and surface water.

61. Data made public by the North Carolina Department of Environmental Quality

---

[31] DuPont Fluoroproducts, "Biennial Report for the Manufacture of APFO Calendar Years of 2002 and 2003, DuPont Company —Fayetteville Works," submitted October 26, 2004 in U.S. EPA Docket No. AR-226.

-47-

("DEQ") show that the Site emitted thousands of pounds of PFASs each year between 2012-2016.[32] The Site emitted at least 498 pounds of HPFO dimer acid fluoride, a parent chemical of GenX, into the air each year from 2012-2016, sending into the air more than 669 pounds in 2015.[33] In 2016, Chemours emitted approximately 2700 pounds.[34] Stack test measurements show GenX was emitted from January 2018 through April 2018 at a rate of 2758 pounds per year.[35]

62.    Defendants' emissions of PFASs, including GenX, have affected the rainwater for miles around the Chemours Facility. For example, North Carolina's Division of Air Quality ("DAQ") detected GenX in rainwater as far as seven miles from the Chemours Facility, and DAQ detected GenX in rainwater collected five miles from the facility at a level of 810 ppt.[36] Testing through December 2019 has demonstrated that Defendants continue to cause PFASs to literally rain down on properties near the Fayetteville Works plant.[37]

63.    DAQ's tests showed rainwater collected under vegetation to have much higher concentrations of GenX compared to rainwater collected from open areas.[38] For example, at one

---

[32] "Information Request Form," https://files.nc.gov/ncdeq/GenX/DEQ%20Emissions%20Information%20Emerging%20Contaminants.pdf (last accessed May 4, 2020).

[33] "Information Request Form," Chemours Company – Fayetteville Works; Air Quality Permit No. 03735T43 https://files.nc.gov/ncdeq/GenX/DEQ%20Emissions%20Information%20Dimer%20Acid.pdf (last accessed May 4, 2020).

[34] The Progressive Pulse, "Chemours emitted nearly 40 times GenX-related compounds into the air than company reported; DEQ issues notice," http://pulse.ncpolicywatch.org/2018/04/06/chemours-emitted-nearly-40-times-genx-related-compounds-into-the-air-than-company-reported-deq-issues-notice/ (last accessed May 8, 2020)

[35] DEQ Public Information Session: GenX and Emerging Compounds Update May 29, 2018, Slide 19, https://files.nc.gov/ncdeq/GenX/Presentation_May29InfoSession_StPaulsMiddleSchool.pdf (last accessed May 8, 2020).

[36] Groundwater and Rainwater Sample Testing Results, NC DEQ (https://files.nc.gov/ncdeq/GenX/Rainwater%20and%20Groundwater%20Test%20Results%2020180405.pdf) (last accessed May 8, 2020).

[37] https://files.nc.gov/ncdeq/GenX/Data/air-sampling/2020-01-22-Chemours-Weekly-Rainwater-summary-through-Dec-17-2019.pdf (last accessed May 8, 2020)

[38] See NC DAQ March 19-20, 2018 Rainwater GenX, NC DEQ (https://files.nc.gov/ncdeq/GenX/Data/2018-03-19%20DAQ%20GenX%20rainwater%20sampling.pdf ) (May 4, 2020) and NC DAQ March 10-12, 2018 Rainwater GenX , NC DEQ (https://files.nc.gov/ncdeq/GenX/Data/2018-03-10%20DAQ%20GenX%20rainwater%20sampling.pdf) (last accessed May 4, 2020).

-48-

location, rain collected under vegetation contained 4840 ppt of GenX while rain collected in the open contained 5.5 ppt of GenX.[39]

64.    In addition to intentional releases through stacks, Defendants accidentally release significant amounts of PFASs into the air.  In November 2019, a leak in one of Chemours' stacks led to an unintentional – yet significant – release of PFASs into the air.[40]  During that period of time, rainfall data showed an increase in GenX concentration.[41]

65.    Defendants continue to release PFASs, including GenX, into the air on a regular basis.[42]  These PFASs damage Plaintiffs' property.

**E.  Public Disclosure of Defendants' Pollution.**

66.    In November 2016, Dr. Detlef Knappe of North Carolina State University and a team of researchers from other institutions published a study that identified GenX and other PFASs at the King's Bluff intake site in the Cape Fear River.[43] Between June 14, 2013 and December 2, 2013, Dr. Knappe's team had taken daily samples of raw water downstream of the Fayetteville Works site at the King's Bluff intake, and at two locations upstream of the Fayetteville Works site. While upstream sampling revealed only the presence of so-called "legacy PFASs,"[44] at King's Bluff, Dr. Knappe's team found concentrations of GenX as high as 4,500 parts per trillion ("ng/L" or "ppt"), with a mean (average) concentration of GenX of 631 ppt -- both well in excess of the state health goal of 140 ppt.

[39] NC DAQ March 10-12, 2018 Rainwater GenX , NC DEQ, https://files.nc.gov/ncdeq/GenX/Data/2018-03-10%20DAQ%20GenX%20rainwater%20sampling.pdf (last accessed May 4, 2020).
[40] The Progressive Pulse, "Leak in pipe at Chemours plant emitted a type of PFAS into air; amount not independently confirmed," http://pulse.ncpolicywatch.org/2020/01/29/leak-in-pipe-at-chemours-plant-emitted-a-type-of-pfas-into-air-amount-not-independently-confirmed/ (last accessed May 8, 2020)
[41] Compare September-October 2019 data to November-December 2019 data (https://files.nc.gov/ncdeq/GenX/Data/air-sampling/2020-01-22-Chemours-Weekly-Rainwater-summary-through-Dec-17-2019.pdf) (last accessed May 8, 2020).
[42] https://www.chemours.com/en/-/media/files/corporate/fayetteville-works/8d-ncdeq-monthly-emissions-report-12202019.pdf (last accessed May 8, 2020)
[43] Mei Sun, et. al, "Legacy and Emerging Perfluoroalkyl Substances are Important Drinking Water Contaminants in the Cape Fear Watershed of North Carolina," 3 *Environ. Sci. Technol. Let*. 415 (2016).
[44] *E.g*., PFASs that had been phased out through the EPA's voluntary PFOA Stewardship Program.

-49-



**Average concentration in drinking water source (ng/L)**

Source: Mei Sun, et al., "Legacy and Emerging Perfluoroalkyl Substances are Important Drinking Water Contaminants in the Cape Fear Watershed of North Carolina," 3 *Environ. Sci. Technol. Let*. 415 (2016).

Dr. Knappe's team also detected significant concentrations of six other PFECAs at King's Bluff.

67.     DuPont reportedly installed new abatement technology in November 2013, that the company claimed would "dramatically drop" the average GenX levels in the Cape Fear River. Dr. Knappe's 2016 article reports, however, that additional samples taken in August 2014 showed similar levels of GenX to the mean concentration he had found in August 2013 (again, in excess of the current North Carolina state health advisory standard) as well as a high concentration of other PEFCAs at levels that are believed to be unsafe for humans.

68.     Dr. Knappe further reported that based on an analysis taken at every stage of the water treatment process at the Sweeney Water Treatment Plant in Wilmington, North Carolina, PFASs in the Cape Fear River were not effectively removed by the coagulation, ozonation, biofiltration, sedimentation, or disinfection processes ordinarily used by water providers to treat drinking water.[45]

69.     On June 15, 2017, representatives of Chemours met with officials from state and local agencies and represented that the GenX compound found in the Cape Fear River was not due to discharge from the plant making GenX but was likely a byproduct of another

---

[45] Mei Sun, et. al, *supra*

-50-

manufacturing process conducted at the Fayetteville Works site *since 1980*. Upon information and belief, these discharges exceeded the state health goal of 140 ppt and occurred at levels believed to be unsafe for human consumption.

70.     In July 2017, upon information and belief, Chemours admitted to State regulators that its 2015 groundwater sampling had also revealed the presence of PFASs other than C8 at the Fayetteville Works site.

71.     In August 2017, the State requested additional groundwater sampling at the Fayetteville Works site, which demonstrated the presence of GenX at 13 of 14 sampling locations, at levels greater than the practical quantitation limit ("pql"). Levels of GenX in groundwater monitoring wells at the site show GenX at concentrations from 519 to 61,300 ppt – vastly exceeding both the PQL and the current state health goal of 140 ppt. Five wells adjacent to the Cape Fear River have GenX concentrations in excess of 11,800 ppt.

72.     In August 2017, the EPA confirmed the presence of additional byproducts of Defendants' Nafion® manufacturing processes, described as PFESA Byproduct No. 1 and PFESA Byproduct No. 2 (and referred to in this Complaint as Nafion® Byproduct Nos. 1 and 2), at an outfall where Defendants' wastewater is discharged into the Cape Fear River. In particular, even after Chemours took undisclosed steps to reduce its PFAS releases from the Fayetteville Works site, the EPA found levels of Nafion® Byproduct No. 1 (CAS No. 29311-67-9) as high as 15,800 ppt, and Nafion® Byproduct No. 2 (CAS No. 749836-20-2) as high as 73,900 ppt, despite Chemours' continued dilution of its effluent with large volumes of non-contact river water.

73.     All the PFAS chemicals found in the Cape Fear River -- including GenX, and PFESA Byproduct No. 1 and PFESA Byproduct No. 2 -- have been consistently found at levels that far exceed the EPA's health standards for PFOA/PFOS.

**F.  The Chemicals at Issue**

74.     PFASs that have been detected in water drawn from the Cape Fear River downstream of the Fayetteville Works facility and in groundwater surrounding the facility, and

that upon information and belief have resulted from Defendants' activities at the Fayetteville Works site, include, but are not limited to: perfluorooctanoic acid (PFOA or "C8") (CAS No. 335-67-1), several perfluoroalkyl ether carboxylic acids (PFECAs), including perfluoro-2-propoypropanoic acid (PFPrOPrA or "GenX") (CAS No. 13252-13-6); and two byproducts of the Nafion® perfluorosulfonic acid (PFSA)[46] membrane manufacturing process that are known only to the Plaintiffs as "PFESA Byproducts 1 and 2" (or "Nafion® Byproducts 1 and 2").[47]

75.     PFASs are a class of man-made chemicals that do not occur naturally in the environment. They have been widely used to make products more stain-resistant, waterproof and/or nonstick, although they have many other commercial applications in aerospace, automotive, construction, and electronics manufacturing. PFASs may be differentiated from each other by the "chain length," or the number of carbon atoms, in the molecule.  PFOA, for example, has eight carbon atoms, so it is referred to as "C8" and considered a "long-chain" PFAS.

---

[46] Perfluorosulfonic acid is a perfluoroalkyl substance.

[47] The complete list of PFASs found by Dr. Knappe's team consists of:
    a.  Perfluorocarboxylic acids (PFCAs):
         i.  Perfluorobutanoic acid (PFBA) (CAS No 375-22-4);
        ii.  Perfluoropentanoic acid (PFPeA) (CAS No. 2706-90-3);
      iii.  Perfluorohexanoic acid (PFHxA) (CAS No. 335-67-1);
      iv.  Perfluoroheptanoic acid (PFHpA) (CAS No. 335-67-1);
       v.  Perfluorooctanoic acid (PFOA or "C8") (CAS No. 335-67-1);
      vi.  Perfluorononanoic acid (PFNA) (CAS No. 375-95-1);
    vii.  Perfluorodecanoic acid (PFDA) (CAS No. 335-76-2);
    b.  Perfluorosulfonic acids (PFSAs):
         i.  Perfluorobutane sulfonic acid (PFBS) (CAS No. 375-73-5);
        ii.  Perfluorohexane sulfonic acid (PFHxS) (CAS No. 355-46-4);
      iii.  Perfluorooctane sulfonic acid (PFOS) (CAS No. 1763-23-1);
    c.  Perfluoroalkyl ether carboxylic acids (PFECAs):
         i.  Perfluoro-2-methoxyacetic acid (PFMOAA) (CAS No. 674-13-5);
        ii.  Perfluoro-3-methoxypropanoic acid (PFMOPrA) (CAS No. 377-73-1);
      iii.  Perfluoro-4-methyoxybutanoic acid (PFMOBA) (CAS No. 863090-89-5);
      iv.  Perfluoro-2-propoypropanoic acid (PFPrOPrA or "GenX") (CAS No. 13252-13-6);
       v.  Perfluoro(3,5-diolxahexanoic) acid (PFO2HxA) (CAS No. 39492-88-1);
      vi.  Perfluoro(3,5,7-trioxaoctanoic) acid (PFO3OA) (CAS No. 39492-89-2);
    vii.  Perfluoro(3,5,7,9-tetraoxadecanoic) acid (PFO4DA) (CAS No. 39492-90-5).

-52-

76.     PFASs are highly persistent in the environment, as they contain perfluorinated chains that only degrade very slowly, if at all, under environmental conditions.  In addition, some polyfluorinated chemicals break down to form perfluorinated ones.[48]

77.     Regulators and the public have little access to information about the commercial applications, potential release mechanisms, and resulting exposure sources and concentrations for many of the individual PFASs, of which there are thousands. As a result, there is little knowledge of their environmental fate and transport characteristics, or their toxicological properties, because they have not been studied. Most of the data on fate and toxicity has been provided by industry and is limited to the required testing.  Non-industry researchers are hindered by the difficulty of obtaining from the manufacturers (who treat these substances as proprietary) the necessary reference standards they need to study the toxicity of these substances in the laboratory and to develop analytical techniques to detect and quantify their presence in the environment.[49]

78.     On information and belief, PFASs have sufficiently similar chemical structures and functions to render exposures cumulative, for purposes of their toxicity in humans and animals.

**a.   "Long Chain" PFASs.**

79.     Of the PFASs, so-called "long chain PFASs" -- in particular, the PFOA/C8 used in making Teflon® and a similar chemical used in making ScotchGuard,[50] PFOS -- have been the most extensively studied and regulated to date.

80.     In animal studies, some long-chain PFASs have been found to cause liver toxicity, disruption of lipid metabolism and the immune and endocrine systems, adverse neurobehavioral effects, neonatal toxicity and death, and tumors in multiple organ systems. In the growing body of epidemiological evidence, some of these effects are supported by significant or suggestive associations between specific long-chain PFASs and adverse outcomes, including associations

---

[48] Arlene Blum, et al., "The Madrid Statement on Poly- and Perfluoroalkyl Substances (PFASs)," 123 *Env'tl Health Persp.* A 107 (May 2015), http://dx.doi.org/10.1289/ehp.1509934.
[49] *See, e.g.,* Wang et al., "A Never-Ending Story of Per- and Polyfluoroalkyl Substances (PFASs)?" 51 Environ. Sci. Technol. 2508 (2017).
[50] PFOS, which is perfluorooctanyl sulfonate, CAS No. 1763-23-1.

with testicular and kidney cancers, liver malfunction, hypothyroidism, high cholesterol, ulcerative colitis, lower birth weight and size, obesity, decreased immune response to vaccines, and reduced hormone levels and delayed puberty.[51]

81.     The "C8 Science Panel" that was empowered by DuPont to "offer a scientific answer to the important fundamental question: Is PFOA exposure as experienced by the class [of people who obtained their drinking water from the Ohio River] capable of causing serious latent disease?"[52] concluded there is a "probable link" between exposure to the long-chain PFAS known as PFOA or C8 in drinking water and the serious conditions of pregnancy-induced hypertension and preeclampsia, high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.[53]

82.     In 2006, the EPA initiated the voluntary PFOA Stewardship Program, calling for the complete elimination of PFOA (C8) and long-chain PFASs from emissions to all media and from manufactured products by 2015, "because of concerns about the impact of PFOA and long-chain PFASs on human health and the environment, including concerns about their persistence, presence in the environment and in the blood of the general U.S. population, long half-life in people, and developmental and other adverse effects in laboratory animals."[54]

83.     In 2009, the EPA included PFOA/C8 and PFOS on its "Drinking Water Contaminant Candidate List 3," for which "the occurrence or anticipated occurrence of a contaminant was likely at levels of concern to human health."[55]

84.     In 2009, the EPA established provisional health advisories (PHAs) for short-term exposures to PFOA and PFOS through drinking water, recommending a level of 0.4 ppb (parts

---

[51] *Id.*
[52] Letter dated January 22, 2010 from Laurence F. Janssen, Esq. [lead counsel for DuPont] to Drs. Fletcher, Steenland & Savitz [the C8 Science Panel], re: "Jack W. Leach et al., v. E.I. du Pont de Nemours and Company, Circuit Court of Wood County, WV, Civil Action No. 01-C-608."
[53] *See* ¶8, *supra*.
[54] U.S. Envt'l Prot. Agency, "Fact Sheet: 2010/2015 PFOA Stewardship Program," accessed at https://www.epa.gov/assessing-and-managing-chemicals-under-tsca/fact-sheet-20102015-pfoa-stewardship-program#launch (last accessed May 8, 2020).
[55] U.S. Envt'l Prot. Agency, "Drinking Water Contaminant Candidate List 3—Final," 74 Fed. Reg. 51850 (Oct. 8, 2009).

-54-

per billion) for PFOA and 0.2 ppb (parts per billion) for PFOS. In 2016, the EPA issued more stringent lifetime health advisories for long-term exposures to C8 and PFOS, recommending that the *combined* level of these two PFASs in drinking water should not exceed 70 parts per trillion (ppt).[56] The similar PFASs found in the Cape Fear River, groundwater, and properties near the Fayetteville Works facility -- including GenX and Nafion® Byproducts 1 and 2 -- have consistently been found at levels that well exceed the EPA's health advisories for PFOA and PFOS.

**b. "Short Chain" PFASs.**

85.     The most common replacements for the long-chain PFASs targeted by EPA's PFOA Stewardship Program are shorter-chain PFASs with similar structures, or compounds with fluorinated segments joined by ether linkages, such as the PFECAs that include GenX and Nafion® Byproducts 1 and 2.

86.     These shorter-chain fluorinated alternatives are more likely than not bioaccumulative, and they are still as environmentally persistent as long-chain substances or may degrade into equally persistent products.[57] Manufacturing applications often require a higher relative concentration of shorter-chain PFAS to achieve the same level of desired performance as provided by the longer-chain PFAS, resulting in higher application concentrations for the alternatives, and potentially higher concentrations being released to the environment.

87.     As with the long-chain PFASs, evidence exists to support the toxicity of PFECAs in humans and animals, as noted in the March 11, 2009 Consent Order entered on DuPont's Premanufacture Notice for P-08-508 and P-08-509.

88.     DuPont has been studying the health effects of the PFECA's known as GenX since last least 1963, when it conducted an acute oral toxicity study in rats to determine the lethal dose for exposure to GenX's ammonium salt. DuPont's internal data studies have demonstrated an association between GenX and various health effects in laboratory animals that are consistent

---

[56] U.S. Envt'l Prot. Agency, *Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate*, 81 Fed. Reg. 33250 (May 25, 2016).
[57] Arlene Blum, et al., *supra* note 51.

with the effects of other PFASs, including effects in the liver, kidney, pancreas, testicles, and immune system.[58]

89.     The publicly-reported results of Defendants' studies on the toxicity of GenX contain misrepresentations and factual misstatements that tend to understate GenX's potential for toxicity.[59] Defendants' selective and/or misleading release of data on GenX is consistent with Defendants' concealment of similar pertinent health data on C8 -- for which they received an administrative penalty from the EPA

90.     Data from DuPont's animal studies indicates that GenX is an animal carcinogen in multiple organ systems in both male and female rats, and that GenX poses reproductive/developmental risks, as well as toxicity in the liver, kidneys, the hematological system, the adrenal glands, the stomach, as well as other adverse effects.[60]

91.     Specifically, DuPont's data[61] show toxic effects from short term exposures, sub-chronic exposures, and long-term exposures:

    a.  GenX exposure to rats and mice resulted in numerous different types of cancer at levels exceeding controls in the brain, liver, adrenal gland, pancreas (two types of pancreatic cancer), testes, as well as fibrosarcomas, malignant lymphomas, and uterine polyps.

    b.  GenX exposure to rats and mice resulted in adverse reproductive and developmental effects, severe liver toxicity and adverse liver impacts from

---

[58] *See* TSCA Non-Confidential Business Information submitted to EPA. 8(e) Coordinator, USEPA, for 8EHQ-06-16478,
https://assets.documentcloud.org/documents/2746960/GenX8eFilings.pdf.
[59] *See* Beekam et al. "Evaluation of substances used in the GenX technology by Chemours, Dordrecht," RIVM Letter report 2016-0174 (National Institute for Public Health and the Environment Ministry of Health, Welfare and Sport, The Netherlands 2016); and J.M. Caverly Rae, et al., "Evaluation of chronic toxicity and carcinogenicity of ammonium 2,3,3,3-tetrafluoro-2-(heptafluoropropoxy)-propanoate in Sprague–Dawley rats," 2 Toxicology Reports 939 (2015).
[60] *See* data reported in Lisa Craig, "H-28548: Combined Chronic Toxicity/Oncogenicity Study 2-Year Oral Gavage Study In Rats"– Laboratory Project ID: DuPont-18405-1238" (MPI Research, Inc., Mattawan, Michigan 2013) (sponsored By E.I. du Pont de Nemours and Company).
[61] *Id.*

-56-

changes to RNA messaging, that may lead to adverse effects not only in the liver, but in other organs, as well as cancer occurrence.

c. GenX exposure to rats and mice resulted in adverse impacts in the adrenal gland, kidneys, stomach, bile duct, brain, reproductive cycles, the tongue, eyes, and immune system, and potentially may result in genotoxicity.

92. The toxicity results from reports of animal studies in fact indicate that GenX is a significantly toxic PFAS. Human studies have not been done at this time. However, based on the available animal studies, GenX may in fact be as toxic *or more toxic* to humans than PFOA.

93. GenX is likely to adversely affect development, reproduction, liver function, immune systems, RNA messaging, stomach, eyes, and tongue, and to cause various forms of cancer. Human exposure to GenX in drinking water from private wells like that of Plaintiffs is continuous, moreover, unlike the exposure in existing animal studies.

94. In July 2017, the North Carolina Health and Human Services Department released a health goal for exposure to GenX in drinking water of 140 nanograms per liter (parts per trillion or "ppt"). According to the State, this updated health goal of 140 ppt is expected to be the most conservative and health protective for non-cancer effects in bottle-fed infants, pregnant women, lactating women, children and adults. It is based, however, on the available public literature that consists primarily of DuPont-funded (and misleading) publications as discussed above.

95. Given what is believed to be the cumulative nature of PFAS exposure, and the fact that consumers of water drawn from Plaintiffs' wells have already been exposed to a combination of Defendants' perfluorinated contaminants (including PFOA/C8, GenX, and Nafion® Byproducts 1 and 2, and an unknown number of other PFASs), extreme caution should be taken to completely eliminate any further PFAS chemicals from entering Plaintiffs' property, including their groundwater wells.

**G. Defendants' Statutory Violations**

96. Defendants violated their ongoing duty under both North Carolina and Federal law to disclose to the State of North Carolina any known constituents in their discharges that posed

-57-

a potential risk to human health, in connection with their NPDES Permit. See, e.g., 15A N.C.A.C. 2H.0105(j) (requiring applicants to disclose "all known toxic components that can be reasonably expected to be in the discharge, including but not limited to those contained in a priority pollutant analysis"); 14A N.C.A.C. 2B.0202(64) (defining toxic substances to include "any substance or combination of substances…which after discharge and upon exposure…has the potential to cause death, disease, behavioral abnormalities, cancer, genetic mutations, physiological malfunctions (including malfunctions or suppression in reproduction or growth) or physical deformities in such organisms or their offspring"); 40 C.F.R. § 122.41(l)(8) (requiring, as a standard NPDES permit condition, that "[w]here the permittee becomes aware that it failed to submit any relevant facts in a permit application, or submitted incorrect information in a permit application . . . it shall promptly submit such facts or information."); U.S. Envt'l Prot. Agency, "Revised Policy Statement on Scope of Discharge Authorization and Shield Associated with NPDES Permits," available at https://www3.epa.gov/npdes/pubs/owm0131.pdf.

97.     Defendants also violated, and continue to violate, their duty under the NPDES Permit to take "all reasonable steps to minimize or prevent any discharge . . . in violation of [its] permit with a reasonable likelihood of adversely affecting human health or the environment," 40 C.F.R. § 122.41(d), as well as their duty under North Carolina groundwater regulations to take action to terminate and control any discharge of "waste or hazardous substance to the groundwaters of the State, or in proximity thereto," mitigate any resulting hazards, and notify State regulators. 15A N.C.A.C. 2L .0106(b).

98.     Defendants' ongoing discharges into the Cape Fear River have violated, and continue to violate, North Carolina water quality standards for surface water, in that they:

a.   render the Cape Fear River waters injurious to aquatic life or wildlife, recreational activities, public health, or impair the waters for one or more of their designated uses, 15A N.C.A.C. 02B .0208(a); and

b.   preclude, on a short term and/or long term basis, one or more of the best uses of the water, including as "a source of water supply for drinking, culinary, or food-

-58-

processing purposes" and for "aquatic life propagation and maintenance of biological integrity (including fishing and fish), wildlife, secondary recreation, [and] agriculture." See 15A N.C.A.C. 2B .0216(2) and 15A N.C.A.C. 2B .0216(1) & .0211(1).

99.     Defendants' ongoing discharges of GenX and, upon information and belief, other PFASs including Nafion® Byproducts 1 and 2, into groundwater have violated, and continue to violate, North Carolina groundwater standards in that these discharges are comprised of substances which are not naturally occurring and for which no standard is specified, but are contaminating groundwater at or above the practical quantitation limit (PQL), as prohibited by 15A N.C.A.C. 2L .0202(c).

**H. Harm to Plaintiffs' Property**

100.     In August 2017, DEQ tested groundwater at wells located on the Fayetteville Works site and detected GenX in violation of state groundwater standards in 13 of 14 wells. In addition, DEQ's tests detected other PFASs, including PFOA and PFOS.[62]

101.     Tests performed in September 2017 detected GenX in the groundwater wells of property owners who lived near the Site at levels up to 1300 ng/L, over nine times as high as the state health goal limit of 140 ng/L.[63] In this first phase of sampling, tests found GenX in 106 of 141 wells, 51 of which were found to contain GenX at levels above the state health goal.[64] A subsequent round of sampling in late 2017 found GenX in 153 of 208 wells with 64 wells in exceedance of the state health goal, with levels as high as 4000 ng/L.[65]

---

[62] "GenX Timeline," NC DEQ Website, https://deq.nc.gov/news/hot-topics/genx-investigation/genx-timeline (last accessed May 7, 2020) and "Chemours Preliminary Data, August 2017," NC DEQ Website, https://files.nc.gov/ncdeq/GenX/GenX%20Sampling%20Map%2020170906_3.pdf (last accessed May 7, 2020).
[63] "Chemours and DEQ Collected Combined Phase I and Phase II Private Well Water Data for GenX," NC DEQ, https://files.nc.gov/ncdeq/GenX/PhaseI-IICombinedPWWGenXSummary_122017-rev.pdf (last accessed May 18, 2020).
[64] Chemours Overview, *supra* note 37 at slide 5.
[65] Chemours Overview, *supra* note 37 at slide 6

-59-

102.    Since then, PFAS contamination has been found at more than 3200 residences – some of which are over 10 miles from the Fayetteville Works facility.[66]

103.    Defendants' PFASs have also been found in lakes, ponds, and swimming pools near the Fayetteville Works site.  For example, test results from Marshwood Lake showed GenX levels at 968 ng/L, over six times higher than the state health goal limit of 140 ng/L.  The natural spring flowing into the lake was found to contain GenX at 1160 ng/L, and Defendants' PFASs were also detected at elevated levels in the sediment and fish in Marshwood Lake.

104.    Chemours has not only contaminated the air and water – they have contaminated local produce.  PFASs have been detected in a number of fruits and vegetables grown within 10 miles of the Fayetteville Works facility. GenX was found in produce at levels as high as 200 parts per trillion, with total PFAS concentrations hitting 1,100 ppt.[67]

105.    Plaintiffs own property located around the Fayetteville Works facility that have been affected by PFAS contamination. As a result of Defendants releasing PFASs from the Fayetteville Works facility, each Plaintiff has been harmed.

106.    Plaintiffs' wells are among those that tested positive for PFAS contamination.  As a result, Plaintiffs are unable to safely drink or otherwise use their well water.

107.    Upon information and belief, the aquifer feeding Plaintiffs' wells is contaminated with GenX and other PFASs, including but not limited to Perfluoro-2-methoxypropanoic acid (PMPA), Perfluoro-3-methoxypropanoic acid (PFMOPrA), Perfluorobutanesulfonate (PFBS), Perfluorobutyric acid (PFBA), Perfluoroheptanoic acid (PFHpA), Perfluorohexanesulfonate (PFHxS), Perfluorohexanoic acid (PFHxA), Perfluorooctanesulfonate (PFOS), Perfluorooctanoic acid (PFOA), Perfluoropentanoic acid (PFPeA), Nafion Byproduct 1, Nafion

---

[66]"Residential Samples Collected the Week of April 6th, 2020; Fayetteville Consent Order." https://edocs.deq.nc.gov/WasteManagement/ElectronicFile.aspx?docid=1395830&dbid=0&repo=Waste Management (last accessed May 7, 2020)
[67] "FDA: GenX, 14 types of perfluorinated compounds found in produce grown within 10 miles of Chemours" http://pulse.ncpolicywatch.org/2019/06/03/fda-genx-14-types-of-perfluorinated-compounds-found-in-produce-grown-within-10-miles-of-chemours/?fbclid=IwAR014LNqCzCOPu0lPYR7BacKExEPPuVMHsc176l-dsLhcoF3SYfFq_Xk_gA (last accessed May 7, 2020)

-60-

Byproduct 2, Perfluoro(3,5,7,9-tetraoxadecanoic) acid (PFO4DA), Perfluoro-2-methoxyacetic acid (PFMOAA), Perfluoro(3,5,7-trioxaoctanoic) acid (PFO3OA), Perfluoro(3,5-dioxahexanoic) acid (PFO2HXA), Perfluoro-4-methoxybutanic acid (PFMOBA), 2,3,3,3-Tetrafluoro-2-(pentafluoroethoxy) propanoic acid (PEPA), Hexanoic acid, 2,2,3,3,4,4,5,5,6,6-decafluoro-6-(trifluoromethoxy)-; Butanoic acid, 2,2,3,3,4,4-hexafluoro-4-[1,2,2,2-tetrafluoro-1-(trifluoromethyl)ethoxy] (PFECA-G), and Perfluoro(3,5,7,9,11 -pentadodecanoic) acid (TAFN4 / PF05DA).

108.    Upon information and belief, groundwater on Plaintiffs' properties contain a number of PFASs in addition to GenX, including but not limited to Perfluoro-2-methoxypropanoic acid (PMPA), Perfluoro-3-methoxypropanoic acid (PFMOPrA), Perfluorobutanesulfonate (PFBS), Perfluorobutyric acid (PFBA), Perfluoroheptanoic acid (PFHpA), Perfluorohexanesulfonate (PFHxS), Perfluorohexanoic acid (PFHxA), Perfluorooctanesulfonate (PFOS), Perfluorooctanoic acid (PFOA), Perfluoropentanoic acid (PFPeA), Nafion Byproduct 1, Nafion Byproduct 2, Perfluoro(3,5,7,9-tetraoxadecanoic) acid (PFO4DA), Perfluoro-2-methoxyacetic acid (PFMOAA), Perfluoro(3,5,7-trioxaoctanoic) acid (PFO3OA), Perfluoro(3,5-dioxahexanoic) acid (PFO2HXA), Perfluoro-4-methoxybutanic acid (PFMOBA), 2,3,3,3-Tetrafluoro-2-(pentafluoroethoxy) propanoic acid (PEPA), Hexanoic acid, 2,2,3,3,4,4,5,5,6,6-decafluoro-6-(trifluoromethoxy)-; Butanoic acid, 2,2,3,3,4,4-hexafluoro-4-[1,2,2,2-tetrafluoro-1- (trifluoromethyl)ethoxy] (PFECA-G), and Perfluoro(3,5,7,9,11 - pentadodecanoic) acid (TAFN4 / PF05DA).

109.    PFASs are expected to persist in Plaintiffs' wells for decades, even if Chemours were to immediately stop releasing all PFASs into the environment.

110.    In addition to groundwater contamination, upon information and belief, Chemours' discharges and emissions of PFASs from the Fayetteville Works facility has contaminated other parts of Plaintiffs' property, including but not limited to soil, surface water, water systems, produce, and air.

111. Plaintiffs cannot use their property as they would if it was not contaminated. For example, many Plaintiffs can no longer grow fruits and vegetables on their property or use their swimming pool due to PFAS contamination.

112. Given what is believed to be the cumulative nature of PFAS exposures, and the fact that these substances were continuously discharged into and onto Plaintiffs' property for decades, extreme caution should be taken to address the PFAS chemicals on Plaintiffs' property and prevent any further PFAS chemicals from entering Plaintiffs' property.

113. Plaintiffs' damages include the following, among other things: the cost of filtering water containing Defendants' chemicals or otherwise attaining a source of uncontaminated water; the cost of cleaning and replacing contaminated plumbing, fixtures, and appliances; the cost to test for Defendants' chemicals; the loss of use and enjoyment of contaminated property; the encumbrance of any filtration systems present on property; and the reduced value of property and businesses.

**I. Consent Order**

114. In February 2019, State of North Carolina, Department of Environmental Quality ("DEQ") filed a lawsuit against Chemours to address PFAS pollution from the Fayetteville Works facility.[68]

115. In November 2018, Chemours, DEQ, and the environmental group Cape Fear River Watch announced a consent order that would require Chemours to pay a fine and take action to address the existing and ongoing PFAS environmental contamination caused by the Fayetteville Works facility.[69] In response to public comments[70], DEQ issued a revised proposed consent order on February 20, 2019.[71]

---

[68] https://deq.nc.gov/news/press-releases/2019/02/20/deq-files-action-address-pfas-pollution-cleanup (last accessed May 5, 2020).
[69] https://files.nc.gov/ncdeq/GenX/Consent-order-11212018.pdf (last accessed May 5, 2020).
[70] https://files.nc.gov/ncdeq/Chemours-Comments---2.22.19.pdf (last accessed May 5, 2020).
[71] https://files.nc.gov/ncdeq/GenX/2019-02-20-FINAL-DEQ-Response-to-Comments-on-Proposed-Consent-Order.pdf (last accessed May 5, 2020).

116.     On February 26, 2019, Superior Court Judge Douglas B. Sasser signed and made final the Consent Order, which requires Chemours to pay a $12 million fine and, among other things, conduct a program to determine the extent of contamination in private groundwater wells around the facility. As of the first quarter of 2020, the range of PFAS-contaminated wells is still unknown, but Chemours' consultants have detected PFASs in wells located over 10 miles from the Fayetteville Works facility.[72]

117.     In addition, the Consent Order requires Chemours to provide replacement drinking water supplies for certain households or entities.[73]

118.     For drinking water wells where GenX has been detected at concentrations greater than 140 ng/L, Chemours must provide for connection to a public water supply or, if such connection would cost greater than $75,000, connection to a whole-house filtration system.[74]

119.     For drinking water wells where the combined concentration of certain PFASs exceed 70 ng/L or where any individual PFAS exceeds 10 ng/L, Chemours must provide up to three under-sink reverse osmosis drinking water systems.[75]

120.     After a property is found to have contaminated well water, Chemours must provide interim replacement drinking water – i.e., bottled water – until permanent replacement water supplies have been provided.[76]

121.     Chemours' actions have not resolved the ongoing damage to Plaintiffs' property. The following is a non-exhaustive lists of problems that persist:

- It is unclear whether filtration systems will be provided for wells used for irrigation or agricultural uses. If they are not, then Plaintiffs cannot grow fruit, vegetables, and other crops -- or raise cattle, horses, or other animals -- without risk of contamination.

---

[72] https://www.chemours.com/en/-/media/files/corporate/fayetteville-works/28_ncdeq_quarterly-progress-report_04242020.pdf (last accessed May 5, 2020);
https://edocs.deq.nc.gov/WasteManagement/ElectronicFile.aspx?docid=1395830&dbid=0&repo=Waste Management (last accessed May 5, 2020).
[73] See paragraphs 19-20. https://files.nc.gov/ncdeq/GenX/2019-02-25-Consent-Order---file-stamped-and-fully-executed--b--w-.pdf (last accessed May 5, 2020)
[74] *Id*., paragraph 19.
[75] *Id*., paragraph 20.
[76] *Id*., paragraph 23.

- Whole-house filtration systems require unsightly sheds to be erected over the property's wellhead, and the property owners are not given access to the wellhead.

- Property owners must pay for electricity to the whole-house filtration system, and it is unclear whether they are adequately compensated for such costs.

- The whole house filtration system does not address contaminated plumbing in the home such as hot water heaters, water softeners and pipes, which can lead to additional contamination.[77]

- For those who have had reverse-osmosis systems installed, contaminated water must still be used for a number of everyday uses, including bathing, washing clothes, and washing dishes.

- The reverse osmosis system intrusively takes up space below sinks.

- It is unclear how long Chemours will maintain the filtration systems.

- For Plaintiffs with contaminated wells and who are receiving bottled water, transporting, storing, and using gallons of bottled water to drink, cook, wash hands, and brush teeth, is and has been exceedingly burdensome (as is disposing of the numerous empty water bottles).

- Plaintiffs' property value has significantly decreased as a result of the contamination.

V.     **CAUSES OF ACTION**

**COUNT I**
**Private Nuisance**

122.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here, and further allege as follows.

123.    Defendants' operation of the Fayetteville Works facility, and their discharges, emissions, and releases of PFASs including, but not limited to, PFOA ("C8"), GenX, Nafion® Byproducts 1 and 2, PFECAs, constitute an unreasonable use of Defendants' land which has

---

[77] For samples showing contaminated tap water even after GAC filtration, see https://files.nc.gov/ncdeq/GenX/Data/Indoor-at-location-71.pdf (last accessed May 8, 2020).

-64-

caused substantial and unreasonable interference with Plaintiffs' use and enjoyment of their property.

124.    Defendants knew or, in the exercise of reasonable care, should have known that their manufacturing operations at the Fayetteville Works site were causing the type of contamination now found in soil, groundwater, air, and in the Cape Fear River. Defendants knew of the bioaccumulative, persistent properties of PFASs and the inability of conventional water treatment systems to remove them. Defendants knew that their PFASs including, but not limited to, PFOA ("C8"), GenX, Nafion® Byproducts 1 and 2, and PFECAs, would contaminate the Cape Fear River as well as the soil and groundwater beneath and surrounding the Fayetteville Works site. In addition, Defendants knew that certain PFASs including PFOA ("C8") are associated with serious toxic effects and cancers in humans exposed through drinking water, and that other similar PFASs, including GenX, are associated with serious toxic effects in animals, have not been studied in humans, and present a probable risk to human health. As a result, it was foreseeable to Defendants that humans may be exposed to PFASs including, but not limited to, PFOA ("C8"), GenX, Nafion® Byproducts 1 and 2, and PFECAs, through contaminated property surrounding the Fayetteville Works site. Defendants thus knew, or should have known, that their contamination would seriously and unreasonably interfere with the ordinary comfort, use, and enjoyment of Plaintiffs' property including, but not limited to, their surface water and groundwater wells.

125.    The condition created by Defendants adversely affects the quality and safety of the water drawn from Plaintiffs' wells and causes inconvenience and annoyance to Plaintiffs.

126.    As to the Plaintiffs that own properties containing surface water, the condition created by Defendants constitutes a substantial and unreasonable interference with their use and enjoyment of their properties.

127.    The seriousness of the environmental and human health risk Defendants have created far outweighs any social utility of Defendants' conduct in manufacturing products using

PFASs including, but not limited to, PFOA ("C8"), GenX, Nafion® Byproducts 1 and 2, and PFECAs, and concealing the dangers posed to human health and the environment.

128.     Continuing harm caused by Defendants includes not only their ongoing releases of PFASs such as GenX, Nafion® Byproducts 1 and 2, and PFECAs, but also the continued propagation of Defendants' historical releases of perfluoroalkyl substances, including PFOA ("C8"), through migration in groundwater, leaching from soil, and recirculation from sediments.

129.     As a direct and proximate result of Defendants' conduct that created a nuisance, Plaintiffs have incurred substantial injuries, damage, and harm as set forth above. Defendants are liable for damages in an amount to be proven at trial.

130.     The nuisance Defendants have created is ongoing and the harm to Plaintiffs will continue.

## COUNT II
### Trespass to Real Property

131.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here, and further allege as follows.

132.     Defendants' operation of the Fayetteville Works facility, and their discharges, emissions, and releases of PFASs including, but not limited to, PFOA ("C8"), GenX, Nafion® Byproducts 1 and 2, and PFECAs, have resulted in an intentional, unauthorized entry by Defendants upon real property owned by Plaintiffs.

133.     Defendants' unauthorized entry upon Plaintiffs' property has resulted in and continues to result in substantial injury, damage, and harm to Plaintiffs' property as set forth above and constitutes a continuing trespass to real property.

## COUNT III
### Negligence

134.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here, and further allege as follows.

135.     Defendants owed Plaintiffs a duty of reasonable care in in the manufacture, management, use, storage, and handling of their PFASs including, but not limited to, PFOA

-66-

("C8"), GenX, Nafion® Byproducts 1 and 2, and other PFASs known as PFECAs, in the release of these substances in and around the Fayetteville Works facility, and in the remediation of contamination those releases caused.

136. Defendants had a duty, in particular, to: (1) identify the potentially harmful chemical byproducts of their operations that were discharged into the air, soil, groundwater, and surface water; (2) investigate and understand the characteristics of the chemical byproducts of their operations before releasing those byproducts into the environment; (3) conduct their operations in a manner that would not unreasonably endanger human health and the environment; (4) investigate and remediate environmental releases that they knew posed a potential risk to human health and the environment; and (5) warn Plaintiffs of environmental releases that created a probable risk to human health from contamination of plaintiffs' property including, but not limited to, Plaintiffs' water, groundwater, and/or water systems, due to the persistence and toxicity of these substances.

137. Defendants failed to exercise ordinary and reasonable care in the manufacture, management, use, storage, and handling of their PFASs including, but not limited to, PFOA ("C8"), GenX, Nafion® Byproducts 1 and 2, and PFECAs, in the release of these substances in and around the Fayetteville Works facility, and in the remediation of contamination those releases caused.

138. Defendants' failure to exercise ordinary and reasonable care has directly and proximately caused the groundwater, surface water, soil, and river sediment in and around the Fayetteville Works facility to become contaminated with Defendants' persistent, bioaccumulative, and toxic perfluoroalkyl substances.

139. Defendants' failure to exercise ordinary and reasonable care has directly and proximately caused Plaintiffs to suffer injury, damage, and harm to their property as set forth above.

-67-

## VI.    PRAYER

**WHEREFORE,** Plaintiffs respectfully pray that this Court grant the following relief:

1. Entry of judgment for Plaintiffs and against Defendants for compensatory and punitive damages;
2. Entry of such injunctive and equitable relief as necessary to abate the nuisance caused by Defendants and to prevent continuing injury and damages to Plaintiffs;
3. All costs and expenses of suit and pre- and post-judgment interest; and
4. For such other and further relief as the Court deems just and proper.

TRIAL BY JURY IS DEMANDED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 38.

This 20th day of May 2020.                    Respectfully Submitted,

/s/ J. Harold Seagle
J. Harold Seagle
**SEAGLE LAW, PLLC**
P.O. Box 15307
Asheville, N.C. 28813
Telephone: 828-774-5711
haroldseagle@charter.net
North Carolina Bar No. 8017

/s/ Scott Summy
Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219-4281
Telephone: (214) 521-3605
Fax: (214) 520-1181
ssummy@baronbudd.com
North Carolina Bar No. 27171
Cary L. McDougal (Pro Hac Vice pending)

-68-

(Texas State Bar No. 13569600)
Stephen C. Johnston (Pro Hac Vice pending)
(Texas State Bar No. 00796839)
M. Cristina Sanchez (Pro Hac Vice pending)
(Texas State Bar No. 24041856)
Brett Land (Pro Hac Vice pending)
(Texas State Bar No. 24092664)

***Attorneys for Plaintiffs***